**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHANIE ENYART,
                 *Plaintiff-Appellee,*

v.

NATIONAL CONFERENCE OF BAR
EXAMINERS, INC.,
                 *Defendant-Appellant.*

No. 10-15286

D.C. No.
3:09-cv-05191-CRB

STEPHANIE ENYART,
                 *Plaintiff-Appellee,*

v.

NATIONAL CONFERENCE OF BAR
EXAMINERS, INC.,
                 *Defendant-Appellant.*

No. 10-16392

D.C. No.
3:09-cv-05191-CRB

OPINION

Appeals from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
December 6, 2010—San Francisco, California

Filed January 4, 2011

Before: Robert E. Cowen*, A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

149

Opinion by Judge Silverman

**COUNSEL**

Gregory C. Tenhoff, Lori R.E. Ploeger, Wendy J. Brenner, and Laura A. Terlouw of Cooley LLP (Palo Alto, California) for the appellant.

Robert A. Burgoyne (argued) of Fulbright & Jaworski L.L.P. (Washington, DC) for the appellant.

Laurence W. Paradis, Anna Levine, and Kara Gilbride of Disability Rights Advocates (Berkeley, California) for the appellee.

Daniel F. Goldstein (argued) of Brown, Goldstein & Levy, LLP (Baltimore, Maryland) for the appellee.

Scott C. LaBarre of LaBarre Law Offices, P.C. (Denver, Colorado) for the appellee.

## OPINION

SILVERMAN, Circuit Judge:

Stephanie Enyart, a legally blind law school graduate, sought to take the Multistate Professional Responsibility Exam and the Multistate Bar Exam using a computer equipped with assistive technology software known as JAWS and ZoomText. The State Bar of California had no problem with Enyart's request but the National Conference of Bar Examiners refused to grant this particular accommodation. Enyart sued NCBE under the Americans with Disabilities Act seeking injunctive relief. The district court issued preliminary injunctions requiring NCBE to allow Enyart to take the exams using the assistive software, and NCBE appealed. We hold that in granting the injunctions, the district court did not abuse its discretion. We affirm.

## I.   Background

Enyart suffers from Stargardt's Disease, a form of juvenile macular degeneration that causes her to experience a large blind spot in the center of her visual field and extreme sensi-

tivity to light. Her disease has progressively worsened since she became legally blind at age fifteen. Enyart relies on assistive technology to read.

Enyart graduated from UCLA School of Law in 2009. Before she could be admitted to practice law in California, Enyart needed to pass two exams: the Multistate Professional Responsibility Exam, a 60-question, multiple-choice exam testing applicants' knowledge of the standards governing lawyers' professional conduct; and the California Bar Exam. The Bar Exam spans three days, on one of which the Multistate Bar Exam is administered. The MBE is a six-hour, 200-question, multiple-choice exam that tests applicants' knowledge of the law in a number of subject areas. NCBE develops both the MPRE and the MBE. NCBE contracts with another testing company, ACT, to administer the MPRE and licenses the MBE to the California Committee of Bar Examiners for use in the Bar Exam.

Enyart registered to take the March 2009 administration of the MPRE and wrote to ACT requesting a number of accommodations for her disability: extra time, a private room, hourly breaks, permission to bring and use her own lamp, digital clock, sunglasses, yoga mat, and migraine medication during the exam, and permission to take the exam on a laptop equipped with JAWS and ZoomText software. JAWS is an assistive screen-reader program that reads aloud text on a computer screen. ZoomText is a screen-magnification program that allows the user to adjust the font, size, and color of text and to control a high-visibility cursor.

ACT granted all of Enyart's requests with the exception of the computer equipped with JAWS and ZoomText. ACT explained that it was unable to offer this accommodation because NCBE would not make the MPRE available in electronic format. In lieu of Enyart's requested accommodation, ACT offered her a choice between a live reader or an audio CD of the exam, along with use of closed-circuit television

for text magnification. Enyart sought reconsideration of ACT's denial of her request to use JAWS and ZoomText, asserting that the options offered would be ineffective because they would not allow her to synchronize the auditory and visual imputs. After ACT denied Enyart's request for reconsideration, Enyart cancelled her registration for the March 2009 MPRE.

In April 2009, Enyart applied to take the July 2009 California Bar Exam, requesting the same accommodations she asked for on the MPRE. The California Committee of Bar Examiners granted all of Enyart's requested accommodations with the exception of her request to take the MBE portion of the test using a computer equipped with ZoomText and JAWS. The Committee denied this request because NCBE would not provide the MBE in electronic format. Because of this denial, Enyart cancelled her registration for the July 2009 Bar Exam.

Enyart registered for the November 2009 MPRE and requested the same accommodations she previously sought for the March 2009 administration. NCBE again declined to allow Enyart to take the MPRE using a computer equipped with ZoomText and JAWS. Instead, they offered to provide a human reader, an audio CD of the test questions, a braille version of the test, and/or a CCTV with a hard-copy version in large font with white letters printed on a black background. Because of NCBE's denial of her request to use a computer with ZoomText and JAWS, Enyart cancelled her registration for the November 2009 MPRE.

After these repeated denials of her requests to take the MPRE and MBE using assistive technology software, Enyart filed this action against NCBE, ACT, and the State Bar of California, alleging violations of the ADA and the Uhruh Act, California's civil rights law. Enyart sought declaratory and injunctive relief.

Enyart moved for a preliminary injunction, asking the district court to order NCBE to allow Enyart to use a computer equipped with ZoomText and JAWS on the February 2010 MBE and the March 2010 MPRE. After hearing oral argument, the court granted Enyart's motion, addressing the factors for deciding whether to issue a preliminary injunction in a well-reasoned order:

> Because the accommodations provided by NCBE will not permit Enyart to take the exam without severe discomfort and disadvantage, she has demonstrated the test is not "accessible" to her, and that the accommodations [offered by NCBE] therefore are not "reasonable." Therefore, this Court concludes, based on the current record and moving papers, that it is more likely than not that Enyart will succeed on the merits at trial. . . .
>
> . . . .
>
> NCBE spends a good portion of its brief disputing Enyart's factual claims that the accommodations offered by NCBE will not permit her to comfortably complete the exam. NCBE points out that in the past Enyart has "successfully utilized a number of different accommodations." Opp. at 2. She used readers and audiotapes during her undergraduate years at Stanford, and used CCTV while working as an administrative assistant before law school. *Id.* Further, NCBE points out that Enyart used a reader to help her complete her LSAT prep program, and used audiotapes and the services of a human reader on her examinations. *Id.*
>
> These factual claims, however, are somewhat beside the point. First, Enyart avers that hers is a progressive condition, so there is no reason to believe an accommodation that may or may not have

been sufficient during Enyart's undergraduate coursework would be sufficient. Second, none of those examinations compare to the bar exam, which is a multi-day, eight hour per day examination. Hence, an accommodation that might be sufficient for a law school examination is not necessarily sufficient for the bar exam. Third, the relevant question is not whether Enyart would be able, despite extreme discomfort and disability-related disadvantage, to pass the relevant exams. NCBE points to no authority to support the position that an accommodation which results in "eye fatigue, disorientation and nausea within five minutes, which become fully developed several minutes after that" is "reasonable."

. . . .

The facts as outlined in the attachments to Plaintiff's motion therefore strongly suggest that the accommodations offered by NCBE would either result in extreme discomfort and nausea, or would not permit Enyart to sufficiently comprehend and retain the language used on the test. This would result in Enyart's disability severely limiting her performance on the exam, which is clearly forbidden both by the statute [42 U.S.C. § 12189] and the corresponding regulation [28 C.F.R. § 36. 309].

NCBE's citation to other regulations and cases does not overcome this factual presentation. . . . [T]he examples [of auxiliary aids] offered in the regulation and the statute cannot be read as exclusive, nor do those examples support the conclusion that such accommodations are reasonable even where they do not permit effective communication. On the contrary, the statute and relevant regulations all emphasize access and effective communication. The statute itself illustrates that the central question is

whether the disabled individual is able to employ an "effective method[ ] of making visually delivered materials available." The evidence submitted by Plaintiff strongly suggests that the *only* auxiliary aid that meets this criteria is a computer with JAWS and ZoomText. While NCBE may be successful at trial in establishing that this is not the case, the record presently before this Court more strongly supports the conclusion that only ZoomText and JAWS make the test "accessible" to Enyart. *See* 42 U.S.C. § 12189.

Order Granting Prelim. Inj. 5-9, Feb. 4, 2010 (footnotes omitted). The district court required Enyart to post a $5,000 injunction bond. NCBE immediately appealed the preliminary injunction.

Meanwhile, while NCBE's appeal of the preliminary injunction was pending, Enyart learned that her score on the March 2010 MPRE was not high enough to allow her to qualify for admission to the California Bar. She moved for a second preliminary injunction, asking the court to order NCBE to provide her requested accommodations on the August 2010 MPRE and "any other administration to Ms. Enyart of the California Bar Exam, the Multistate Bar Exam ('MBE') and/or the MPRE." After filing her motion, Enyart learned that she did not pass the July 2009 Bar Exam. The district court granted a second preliminary injunction ordering NCBE to allow Enyart to take the July 2010 MBE and the August 2010 MPRE on a computer equipped with ZoomText and JAWS, stating:

The relevant question here is whether the auxiliary aids offered by NCBE make the test's "visually delivered materials available" to Enyart. As this Court has previously concluded, they do not. . . . NCBE continues to argue that Enyart is not entitled to her preferred accommodations, and in so doing

> continues to miss the point. She does not argue that she simply "prefers" to use JAWS and ZoomText. On the contrary, she has presented evidence that the accommodations offered by NCBE do not permit her to fully understand the test material, and that some of the offered accommodations result in serious physical discomfort. CCTV makes her nauseous and results in eye strain, and the use of human readers is not suited to the kind of test where on must re-read both questions and answers, and continually shift back and forth between different passages of text. . . . Such accommodations do not make the test accessible to Enyart, and so do not satisfy the standard under the ADA.

Order Granting Prelim. Inj. 5-6, June 22, 2010. The court required Enyart to post an additional $5,000 injunction bond. NCBE immediately appealed, and the appeal was consolidated with NCBE's appeal of the first preliminary injunction.

Enyart has since learned that she received a high enough score on the August 2010 MPRE to qualify for admission to the California Bar but that she did not pass the July 2010 California Bar Exam.[1]

## II.  Discussion

### A.  Jurisdiction and Standard of Review

We have jurisdiction to review the district court's orders granting these preliminary injunctions pursuant to 28 U.S.C. § 1292(a)(1). Our review is for an abuse of discretion. *Does 1-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996). "[I]n the context of a trial court's factual findings, as applied to legal rules," to determine whether a district court has abused its dis-

---

[1]The MBE constitutes only a portion of the California Bar Exam. Enyart does not know what her score was on the MBE portion of the exam.

cretion, "the first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested. If the trial court failed to do so, we must conclude it abused its discretion." *United States v. Hinkson*, 585 F.3d 1247, 1259, 1261-62 (9th Cir. 2009) (en banc) (footnote omitted). If the trial court identified the correct legal rule, "the second step . . . is to determine whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *Id.* at 1262 (footnote and citation omitted). We may affirm the district court on any ground supported by the record. *Canyon County v. Sygenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).

## B.   Mootness

**[1]** As an initial matter, we hold that even though the injunctions only related to the March and August 2010 MPRE exams and the February and July 2010 California Bar Exams, which have since come and gone, NCBE's appeals are not moot because the situation is capable of repetition, yet evading review. "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986). An established exception to mootness applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks and citation omitted).

There is a reasonable expectation that NCBE will be subject to another preliminary injunction in this case. After failing to achieve a passing score on the February 2010

California Bar Exam, Enyart took the test again in July 2010. Now that she failed the July 2010 exam, it is reasonable to expect that she will sign up for a future administration and that she will seek another preliminary injunction. The situation is capable of repetition, satisfying the first prong of the capable-of-repetition-yet-evading-review exception to mootness.

These preliminary injunctions also evade review. On February 4, 2010, the district court issued the first preliminary injunction in this case, which required NCBE to allow Enyart to use JAWS and ZoomText for the February 2010 MBE and the March 2010 MPRE. Once Enyart took these two exams, the terms of the preliminary injunction were fully and irrevocably carried out. The second injunction issued June 22, 2010, and required NCBE to allow Enyart to use JAWS and ZoomText for the July 2010 MBE and the August 2010 MPRE. Again, once Enyart took these exams, the terms of the second preliminary injunction were fully and irrevocably carried out. Due to the limited duration of these injunctions— little more than a month passed between the issuance of the injunctions and the final execution of their terms—NCBE could not practically obtain appellate review of the district court's orders until after the administration of the exams. Because the duration of these injunctions is too short to allow full litigation prior to their expiration, they meet the "evading review" prong of the capable-of-repetition-yet-evading-review exception to mootness.

## C.  Preliminary Injunctions

**[2]**  A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008) (citations omitted). The

district court correctly identified the *Winter* standard as controlling in this case.

## 1.   Likelihood of Success on the Merits

Congress enacted the ADA in order to eliminate discrimination against individuals with disabilities. *See* 42 U.S.C. § 12101(b). The ADA furthers Congress's goal regarding individuals with disabilities: "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" 42 U.S.C. § 12101(a)(8). The ADA contains four substantive titles: Title I relates to employment; Title II relates to state and local governments; Title III relates to public accommodations and services operated by private entities; and Title IV relates to telecommunications and common carriers. *See generally* Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 and 47 U.S.C. §§ 225, 611.

**[3]** 42 U.S.C. § 12189, which falls within Title III of the ADA, governs professional licensing examinations. This section requires entities that offer examinations "related to applications, licensing, certification, or credentialing for . . . professional, or trade purposes" to "offer such examinations . . . in a place and manner *accessible* to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189 (emphasis added). The purpose of this section is "to assure that persons with disabilities are not foreclosed from educational, professional, or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." H.R. Rep. No. 101-485 (III), at 68-69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 491-92.

The Attorney General is charged with carrying out many of the provisions of the ADA and issuing such regulations as he deems necessary. Relevant here, the Attorney General is responsible for issuing regulations carrying out all non-

transportation provisions of Title III, including accessibility standards. 42 U.S.C. § 12186(b).

**[4]** Pursuant to its authority to issue regulations carrying out the provisions of Title III, the Department of Justice has adopted a regulation interpreting § 12189. This regulation defines the obligations of testing entities:

> Any private entity offering an examination covered by this section must assure that . . . [t]he examination is selected and administered so as to *best ensure* that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills . . . [.]

28 C.F.R. § 36.309(b)(1)(i) (emphasis added). The regulation continues:

> A private entity offering an examination covered by this section shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden.

*Id.* § 36.309(b)(3).

Enyart argues that DOJ's regulation requires NCBE to administer the MBE and MPRE "so as to best ensure" that her results on the tests accurately reflect her aptitude, rather than her disability. NCBE argues that the regulation is invalid and asks this court to apply a reasonableness standard in lieu of

the regulation's "best ensure" standard. The district court declined to rule on the validity of 28 C.F.R. § 36.309, and instead held that "even assuming NCBE's more defendant-friendly standard applies," Enyart had demonstrated a likelihood of success on the merits.

We defer to an agency's interpretation of a statute it is charged with administering if the statute "is silent or ambiguous with respect to the specific issue" and the agency's interpretation is "based upon a permissible construction of the statute." *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 (9th Cir. 2006) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). We hold that 28 C.F.R. § 36.309 is entitled to *Chevron* deference.

[5] Section 12189 requires entities like NCBE to offer licensing exams in a manner "accessible" to disabled people or to offer "alternative accessible arrangements." 42 U.S.C. § 12189. Congress's use of the phrases "accessible" and "alternative accessible arrangements" is ambiguous in the context of licensing exams.[2] Nowhere in § 12189, in Title III more broadly, or in the entire ADA did Congress define these terms. The phrase "readily accessible" appears in Titles II and III, but only with respect to physical spaces, i.e., facilities, vehicles, and rail cars. *See* 42 U.S.C. §§ 12142-12148, 12162-12165, 12182-12184. The phrase is not defined; instead, the Act directs the Secretary of Transportation to issue regulations establishing accessibility standards for public transportation facilities, vehicles, and rail cars, 42 U.S.C. §§ 12149, 12163-12164, and 12186(a), and directs the Attorney General

---

[2]"Accessible" can mean "capable of being used as an entrance;" "capable of being reached or easily approached;" "easy to get along with, talk to, or deal with;" "capable of being influenced or affected;" or "capable of being used, seen, known, or experienced." *Webster's Third New International Dictionary, Unabridged* 11 (2002). The last definition, "capable of being used, seen, known, or experienced," is most relevant here. This definition alone does not provide guidance as to what an entity must do to administer an exam in an "accessible" manner.

to issue regulations establishing accessibility standards for new construction and alterations in public accommodations and commercial facilities, 42 U.S.C. § 12186(b). The text of these other ADA provisions does not resolve the ambiguity in § 12189's use of term "accessible" because an examination is not equivalent to a physical space.[3]

**[6]** Because § 12189 is ambiguous with respect to its requirement that entities administer licencing exams in a manner "accessible" to individuals with disabilities, we defer to DOJ's interpretation of the statute so long as that interpretation is based upon a permissible construction of the statute. *See Contract Mgmt., Inc.*, 434 F.3d at 1146-47. NCBE seeks to invalidate 28 C.F.R. § 36.309, arguing that the regulation imposes an obligation beyond the statutory mandate. Instead of the regulation's requirement that entities administer licensing exams in a manner "so as to best ensure" that the results reflect whatever skill or aptitude the exam purports to measure, NCBE argues that the ADA only requires such entities to provide "reasonable accommodations."

The "reasonable accommodation" standard advocated by NCBE originated in the Department of Health and Human Services' regulations implementing the Rehabilitation Act of 1973. *See* 45 C.F.R. 84.12(a) (requiring employers to make "reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity."). When Congress enacted the ADA, it incorporated 45 C.F.R. 84.12's "reasonable accommodation" standard into Title I, which applies in the employ-

---

[3]Of course an exam takes place in a physical location, and § 12189 requires entities such as NCBE to offer the exams in a "place" accessible to people with disabilities. 28 U.S.C. § 12189. But the statute also requires exams to be administered in a "manner" accessible to people with disabilities, and that is where the term "accessible" becomes ambiguous.

ment context. *See* H.R. Rep. No. 101-485(II), at 2 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 304 ("Title I of the ADA . . . incorporates many of the standards of discrimination set out in regulations implementing section 504 of the Rehabilitation Act of 1973, including the obligation to provide reasonable accommodations unless it would result in an undue hardship on the operation of the business.").

**[7]** Notably, Congress did *not* incorporate 45 C.F.R. 84.12's "reasonable accommodation" standard into § 12189. Instead, § 12189 states that entities offering licensing exams "shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative arrangements for such individuals." 42 U.S.C. § 12189. One reasonable reading of § 12189's requirement that entities make licensing exams "accessible" is that such entities must provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to the same degree as nondisabled people taking the exam—in other words, the entities must administer the exam "so as to best ensure" that exam results accurately reflect aptitude rather than disabilities. DOJ's regulation is not based upon an impermissible construction of § 12189, so this court affords *Chevron* deference to 28 C.F.R. § 36.309 and applies the regulation's "best ensure" standard.

**[8]** Applying 28 C.F.R. § 36.309's "best ensure" standard, we conclude that the district court did not abuse its discretion by holding that Enyart demonstrated a likelihood of success on the merits. The district court found that the accommodations offered by NCBE did not make the MBE and MPRE accessible to Enyart. This finding is supported by evidence that Enyart would suffer eye fatigue, disorientation, and nausea if she used a CCTV, so CCTV does not best ensure that the exams are accessible to her; that auditory input alone is insufficient to allow Enyart to effectively comprehend and retain the language used on the exam; and that, according to Enyart's ophthalmologist, the combination of ZoomText and

JAWS is the only way she can fully comprehend the material she reads.

NCBE argues that because Enyart has taken other standardized tests using accommodations comparable to those offered by NCBE, the district court erred in finding that those accommodations did not make the MPRE and MBE accessible to her. In support of this argument, NCBE points out that Enyart took the SAT college admissions test using large-print exam booklets; that she used CCTV for her Advanced Placement tests; and that she relied on a human reader and scribe during the LSAT. Although Enyart's prior experiences with the accommodations offered by NCBE may be relevant to establishing whether those accommodations make the MPRE and MBE accessible, they are not conclusive, especially as to whether those accommodations best ensure that the exams are accessible. Enyart graduated from college more than a decade ago, and took the LSAT six years ago. Enyart's disability is a progressive one, and as the district court noted, an accommodation that may or may not have been sufficient years ago is not necessarily sufficient today. Moreover, assistive technology is not frozen in time: as technology advances, testing accommodations should advance as well.[4]

NCBE also argues that because it offered to provide auxiliary aids expressly identified in the ADA, the regulations, a DOJ settlement agreement, and a Resolution of the National Federation for the Blind, courts should not require it do more. We do not find this argument persuasive. The issue in this case is not what might or might not accommodate other people with vision impairments, but what is necessary to make the MPRE and MBE accessible to Enyart given her specific impairment and the specific nature of these exams.

---

[4]The record does not even indicate when the ZoomText and JAWS software programs became available.

As NCBE concedes, the lists of auxiliary aids contained at 42 U.S.C. § 12103 and at 28 C.F.R. § 36.309 are not exhaustive. *See* 42 U.S.C. § 12103(1) ("the term 'auxiliary aids and services' includes (A) qualified interpreters *or other effective methods* of making aurally delivered materials available to individuals with hearing impairments; (B) qualified readers, taped texts, *or other effective methods* of making visually delivered materials available to individuals with visual impairments; . . . and (D) *other similar services and actions*.") (emphases added); 28 C.F.R. § 309(b)(3) ("Auxiliary aids and services required by this section may include taped texts, interpreters *or other effective methods* of making orally delivered materials available to individuals with hearing impairments, Brailled or large print texts or qualified readers for individuals with visual impairments . . . *and other similar services and actions*.") (emphases added). To hold that, as a matter of law, an entity fulfills its obligation to administer an exam in an accessible manner so long as it offers some or all of the auxiliary aids enumerated in the statute or regulation would be inconsistent with Congressional intent:

> The Committee wishes to make it clear that technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities. Such advances may require public accommodations to provide auxiliary aids and services in the future which today they would not be required because they would be held to impose undue burdens on such entities.
>
> Indeed, the Committee intends that the types of accommodations and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.

H.R. Rep. 101-485(II), at 108 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 391.

NCBE points next to a July 2000 settlement between DOJ and the American Association of State Social Work Boards in which the AASSWB agreed to adopt a policy allowing vision-impaired candidates to choose among a list of available accommodations for the social work licensing exam. The list included an audiotaped version of the exam, a large print test book, a Braille version of the exam, extra time, a private room, a qualified reader, and a flexible start time. NCBE argues that because it offered Enyart the accommodations listed in the AASSWB settlement, the court should conclude that the accommodations offered satisfied NCBE's obligations under § 12189 as a matter of law. We find this argument unpersuasive. There is no reason that this decade-old settlement agreement should define the maximum NCBE can be required to do in order to meet its obligation to make the MBE and MPRE accessible to Enyart.[5]

Finally, NCBE makes much of a Resolution of the National Federation for the Blind from 2000 that called upon the American Council on Education to ensure that it administered the GED exam in "the four standard media routinely used by blind persons to access standardized tests: large print, Braille, tape, and live reader." This NFB Resolution appears to have been written to address a specific problem identified in the administration of the GED exam, namely the prohibition on the use of live readers. Moreover, the NFB has no power to define testing entities' obligations under the ADA. The fact that the NFB ten years ago urged the American Council on Education to allow test-takers to choose among large print, Braille, tape, and live reader accommodations does not lead to the conclusion that, as a matter of law, the accommodations offered by NCBE made the MBE and MPRE accessible to Enyart.

---

[5]Moreover, a settlement is, by definition, a compromise and does not necessarily embrace the maximum reach of the statute.

The sources described above—the lists of auxiliary aids contained in the statute and regulation, the AASSWB settlement agreement, and the NFB's Resolution—possibly support a conclusion that the accommodations offered by NCBE are sufficient to meet their obligations with respect to many blind people in many situations. As we have tried to make clear already, accommodations that make an exam accessible to many blind people may not make the exam accessible to Enyart, and our analysis depends on the individual circumstances of each case, requiring a "fact-specific, individualized analysis of the disabled individual's circumstances." *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).

Enyart provided the district court with evidence that the accommodations offered by NCBE will put her at a disadvantage by making her nauseated or by preventing her from comprehending the test material. Enyart presented evidence that she used JAWS and ZoomText for all but one of her law school examinations; that a combination of JAWS and ZoomText is the only way she can effectively access the exam; and that use of a CCTV causes her to suffer nausea and eye fatigue. In a sworn statement, Enyart's ophthalmologist stated that the only way Enyart can fully comprehend the material she reads is if she is able to simultaneously listen to and see magnified test material, as JAWS and ZoomText allow.

The district court reviewed the evidence of Enyart's disability and her history of using auxiliary aids including JAWS and ZoomText, and concluded that "the accommodations offered by NCBE would either result in extreme discomfort and nausea, or would not permit Enyart to sufficiently comprehend and retain the language used on the text. This would result in Enyart's disability severely limiting her performance on the exam, which is clearly forbidden both by the statute and the corresponding regulation." The court compared Enyart's evidence to that offered by NCBE, and found that the balance "more strongly supports the conclusion that only

ZoomText and JAWS make the text 'accessible' to Enyart." This is a logical conclusion, supported by the evidence, and therefore we conclude that the district court did not abuse its discretion in holding that Enyart demonstrated a likelihood of success on the merits.

## 2.   Irreparable Harm

A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is likely in the absence of preliminary relief. *Winter*, 129 S. Ct. at 375. Mere possibility of harm is not enough. *Id.* The district court correctly identified this legal rule and concluded that Enyart had established a likelihood of irreparable harm. Because the court "got the law right," this court should not reverse unless the district court clearly erred in its factual determinations. *Earth Island Institute v. Carlton*, ___ F.3d ___, 2010 WL 4399138, at *2 (9th Cir. 2010).

The district court found that, in the absence of preliminary relief, Enyart would likely suffer irreparable harm in the form of (1) the loss of the chance to engage in normal life activity, i.e., pursuing her chosen profession, and (2) professional stigma. Enyart additionally argues that, as a matter of law, she faced irreparable injury from the fact of NCBE's violation of the ADA. We need not decide whether discrimination in violation of the ADA constitutes irreparable harm *per se*, or whether irreparable harm can be presumed based on such a statutory violation, because we agree with the district court's conclusion that Enyart demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession.

In her declaration in support of her first preliminary injunction motion, Enyart stated that she would not be able to complete a lengthy exam using NCBE's proposed accommodations, even with extended time. The district court was entitled to give credence to that declaration. If Enyart

cannot complete the MPRE or the MBE using NCBE's proposed accommodations—and the evidence suggests that she can only use CCTV for about five minutes before becoming nauseated and disoriented, and that without simultaneous visual and auditory input, she cannot comprehend lengthy written material—then those proposed accommodations do not comply with the ADA, when other technology is readily available that will make the exam accessible.

The district court further inferred that, as a result of her likely failure, Enyart would probably suffer professional stigma and the loss of the opportunity to pursue her chosen profession. NCBE is correct that no evidence in the record supports a finding that, in the absence of preliminary relief, Enyart would *likely* suffer professional stigma. But the district court did not err in concluding that Enyart would likely lose the chance to pursue her chosen profession. If she fails the Bar Exam or scores too low on the MPRE to qualify for admission, Enyart cannot be licensed to practice law in California. This conclusion is not speculative, but rather is prescribed by California law. *See* State Bar Act, Cal. Bus. & Prof. Code § 6060(f) and (g) (requiring passage of general bar exam and professional responsibility exam to qualify for admission and licence to practice law).

**[9]** NCBE argues that Enyart can pursue her chosen profession without admission to the bar, because California Rule of Court 9.42 allows Enyart to represent clients before passing the bar exam so long as she is supervised by a licensed attorney. Even if Enyart is eligible to represent clients under Rule 9.42, the rule only allows her to undertake limited activities under the supervision of an attorney. She is not allowed to hold herself out as an attorney or appear on behalf of a client in court without having a supervisor physically present, and she must obtain a signed consent from all clients acknowledging her status as a "certified law student." Cal. R. Court 9.42(d); *see also* Ninth Cir. R. 46-4 (permitting law students to participate in appeals under similar circumstances). Assist-

ing clients as a certified law student is simply not the same as practicing law as an attorney. Enyart claims she is unable to take advantage of the opportunity afforded by her two-year, public-interest fellowship as a result of her inability to practice law. Because the fellowship is of limited duration, "[a] delay, even if only a few months, pending trial represents precious, productive time irretrievably lost" to Enyart. *See Chalk v. U.S. Dist. Ct.*, 840 F.2d 701 (9th Cir. 1988) (holding that teacher suffered irreparable harm when he was transferred from classroom position to administrative role because of AIDS diagnosis). Because the district court's finding of irreparable harm in the form of Enyart's likely loss of the ability to pursue her chosen profession is supported by facts in the record, it does not constitute an abuse of discretion. *See Hinkson*, 585 F.3d at 1261.

### 3.  Balance of Equities

[10] The district court compared the harm Enyart would suffer in the absence of preliminary relief to the harm an injunction would cause NCBE, and concluded that the equities weighed in Enyart's favor. The district court rejected NCBE's argument that the injunction would cause NCBE harm that cannot be undone. NCBE argues that providing Enyart's requested accommodations is expensive[6] and poses a security concern; however, as the district court noted, Enyart posted two $5,000 injunction bonds that will cover NCBE's costs in the event it prevails on the merits at trial, and the injunction minimized security risks by requiring Enyart to use NCBE's laptop rather than her own. Compared to the likelihood that Enyart would suffer irreparable harm by losing the chance to pursue her chosen profession in the absence of an injunction, the potential harm to NCBE resulting from injunctive relief was minimal. The district court did

---

[6]NCBE has conceded, however, that the accommodations requested by Enyart would not cause an undue burden on NCBE.

not abuse its discretion in holding that the balance of equities favored Enyart.

## 4. Public Interest

The district court held that "the public clearly has an interest in the enforcement of its statutes," and concluded that the public interest weighed in favor of granting the injunctions. NCBE argues that the public's interest in having statutes enforced is not sufficient to support a grant of a preliminary injunction.

**[11]** In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities. 42 U.S.C. § 12101(a)(9) (finding that "the continuing existence of unfair and unnecessary discrimination and prejudice . . . costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity"). This public interest is served by requiring entities to take steps to "assure equality of opportunity" for people with disabilities. *See id.* § 12101(a)(8). Although it is true that the public also has an interest in ensuring the integrity of licensing exams, NCBE never argued that allowing Enyart to take the MPRE and MBE using a computer equipped with JAWS and ZoomText would result in unreliable or unfair exam results. The district court did not abuse its discretion in concluding that the issuance of these preliminary injunctions served the public's interest in enforcement of the ADA and in elimination of discrimination on the basis of disability.

## III.   Conclusion

For the foregoing reasons, we affirm the district court's February 4, 2010 and June 22, 2010 orders issuing preliminary injunctions requiring NCBE to permit Enyart to take the MBE and MPRE using a laptop equipped with JAWS and ZoomText.

AFFIRMED.