**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBIN FARRIS; RECALL DALE
WASHAM, a Washington political
committee; OLDFIELD & HELSDON,
PLLC, a Washington professional
limited liability company,
        *Plaintiffs-Appellees,*

v.

DAVE SEABROOK, Chair; BARRY
SEHLIN, Vice Chair; JENNIFER JOLY;
JIM CLEMENTS, in their Official
Capacities as Officers and
Members of the Washington State
Public Disclosure Commission;
DOUG ELLIS, in His Official
Capacity as Interim Executive
Director of the Washington State
Public Disclosure Commission,
        *Defendants-Appellants.*

No. 11-35620

D.C. No.
3:11-cv-05431-RJB

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted
November 16, 2011—Portland, Oregon

Filed January 19, 2012
Amended April 11, 2012

Before: Raymond C. Fisher, Richard A. Paez and
Richard R. Clifton, Circuit Judges.

3895

Opinion by Judge Fisher

## COUNSEL

Robert M. McKenna, Attorney General; Linda A. Dalton, Senior Assistant Attorney General (argued), Olympia, Washington, for the appellants.

Jeffrey P. Helsdon, Oldfield & Helsdon, PLLC, Firecrest, Washington; William Maurer (argued) and Jeanette Petersen, Institute for Justice, Seattle, Washington; Paul Avelar, Tempe, Arizona, for the appellees.

Theodore J. Angelis and Taki V. Flevaris (argued), K&L Gates, Seattle, Washington, for amici curiae Wisconsin Democracy Campaign and Washington Public Campaigns.

Allen Dickerson, Alexandria, Virginia, for amicus curiae Center for Competitive Politics.

---

## ORDER

The opinion filed January 19, 2012, and appearing at 667 F.3d 1051 (9th Cir. 2012), is **AMENDED**. An amended opinion will be filed concurrently with this order.

With this action, the panel has voted to deny the petition for panel rehearing and rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc, filed February 9, 2012, is **DENIED**.

No further petitions for rehearing will be accepted.

---

## OPINION

FISHER, Circuit Judge:

The district court granted a preliminary injunction prohibiting the State of Washington from enforcing its limitation on

contributions to political committees supporting the recall of a state or county official. We conclude that the plaintiffs satisfied their burden under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), to demonstrate that the contribution limit is likely an unconstitutional and harmful burden on the plaintiffs' rights of free speech under the First Amendment. Accordingly, the district court did not err in granting the injunction, and we affirm.

## I.   Background

### A.   Washington's Recall Procedure

Washington provides its electorate with an elaborate procedure for recalling elected officials. According to Washington's constitution, elected officials may be recalled for malfeasance, misfeasance or a violation of their oaths of office. *See* Wash. Const. art. I, §§ 33, 34. A voter who wishes to recall an elected official must prepare a typewritten charge naming the official and providing a detailed description of the grounds for recall. *See* Wash. Rev. Code § 29A.56.110. Recall charges are filed with the county auditor, and the county's prosecuting attorney then prepares a ballot synopsis, which sets forth the name of the person charged, the title of the office and the elements of the charge. *See id.* §§ 29A.56.120, 29A.56.130. Within 15 days thereafter, the superior court conducts a hearing to decide "(1) whether or not the acts stated in the charge satisfy the criteria for which a recall petition may be filed [i.e., the sufficiency of the charges], and (2) the adequacy of the ballot synopsis." *Id.* § 29A.56.140. The person demanding recall and the person subject to the recall may appear before the court with counsel and may appeal an adverse decision to the Washington Supreme Court. *See id.*

If the charges are held to be sufficient, the recall proponents begin to collect signatures from registered voters who support the petition. To recall a county official whose county

has a population of 40,000 or more, proponents must collect a number of signatures "equal to twenty-five percent of the total number of votes cast for all candidates for the office to which the officer whose recall is demanded was elected at the preceding election." *Id.* § 29A.56.180(1). They have 180 days to collect these signatures following court approval of the ballot synopsis. *See id.* § 29A.56.150(2). If proponents collect the required number of signatures, the auditor must "fix a date for a special election to determine whether or not the officer charged shall be recalled and discharged from office." *Id.* § 29A.56.210. The election must be held "not less than forty-five nor more than sixty days" from the time that the signatures are verified. *Id.* If the recall is successful, the recalled official must vacate his or her office and the appropriate state legislative body will appoint a successor to fill the position until the next general election. *See id.* §§ 29A.56.260, 36.16.110.

The statutory provision challenged here prohibits contributions of more than $800 to a political committee making expenditures in a recall campaign. *See id.* § 42.17A.405(3).[1,2] This limit applies to monetary and in-kind contributions alike. *See id.* § 42.17A.005(15)(c) ("Contributions other than money or its equivalent are deemed to have a monetary value equiva-

---

[1]Formerly codified as Washington Revised Code § 42.17.640(3).

[2]Section 42.17A.405(3) states:

> No person, other than a bona fide political party or a caucus political committee, may make contributions to a state official, a county official, a city official, or a public official in a special purpose district against whom recall charges have been filed, or to a political committee having the expectation of making expenditures in support of the recall of the state official, county official, city official, or public official in a special purpose district during a recall campaign that in the aggregate exceed eight hundred dollars if for a legislative office, county office, or city office, or one thousand six hundred dollars if for a special purpose district office or a state office other than a legislative office.

Wash. Rev. Code § 42.17A.405(3).

lent to the fair market value of the contribution . . . and count[ ] towards any applicable contribution limit of the provider.").[3]

## B.   Plaintiffs' Efforts to Recall Dale Washam

Plaintiff Robin Farris began an effort to recall Pierce County Assessor-Treasurer Dale Washam in 2010, after becoming aware of allegations that Washam had engaged in malfeasance while in office. Farris formed a political committee, Recall Dale Washam ("the Recall Committee"), which she registered with the Washington Public Disclosure Commission (PDC), and filed charges against Washam under § 29A.56.110.

After proceedings in the superior court and an appeal, the Washington Supreme Court found several of Farris' charges sufficient and approved a ballot synopsis. *See In re Recall of Washam*, 257 P.3d 513 (Wash. 2011). The recall proponents then had until August 31, 2011 to collect signatures from 65,495 registered Pierce County voters to qualify the approved synopsis for the November ballot.

Meanwhile, shortly before the Washington Supreme Court issued its decision, the PDC issued the Recall Committee a "Notice of Administrative Charges," alleging that the committee violated Washington Revised Code § 42.17A.405 by accepting more than $800 in in-kind contributions from Oldfield & Helsdon, a law firm that had represented the committee in the state superior court and supreme court proceedings on a pro bono basis. The PDC ultimately withdrew the charges, but stated:

> The fact that PDC staff does not intend to allege a violation of [§ 42.17A.405] should not be construed to     mean     that     the     contribution     limits     of

---

[3]Formerly codified as Washington Revised Code § 42.17.020(15)(c).

[§ 42.17A.405] are not applicable to the recall election. The statute, as written, is to be followed during the recall campaign.

## C.   Proceedings Before the District Court

In June 2011, Farris, the Recall Committee and Oldfield & Helsdon filed a complaint challenging the constitutionality of § 42.17A.405(3)'s $800 contribution limit. Two weeks later, the plaintiffs moved for a preliminary injunction enjoining the State from enforcing the contribution limit, arguing that the limit violated their First Amendment rights. In July 2011, the district court granted the motion, preliminarily enjoining the State from enforcing § 42.17A.405(3) against the plaintiffs during the 2011 recall campaign.

## II.   Jurisdiction

We have jurisdiction to review a district court's order granting a preliminary injunction under 28 U.S.C. § 1292(a)(1). Before we can exercise our jurisdiction under § 1292(a)(1), however, we must ensure that this appeal continues to present a live controversy.

**[1]** While this appeal was pending, the plaintiffs' August 31, 2011 deadline to collect signatures passed. The plaintiffs did not collect the required number of signatures to qualify the recall question for the November 2011 ballot. Because the district court's injunction applied only to the plaintiffs' campaign for the November 2011 ballot, we must consider whether this appeal is now moot. We hold that it is not moot, because this situation is capable of repetition, yet evading review.

This exception to mootness applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to

the same action again." *Enyart v. Nat'l Conference of Bar Exam'rs*, 630 F.3d 1153, 1159 (9th Cir. 2011) (quoting *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)) (internal quotation marks omitted). "[T]he exception frequently arises in election cases 'because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.' " *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1002 (9th Cir. 2010) (quoting *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003)).

**[2]** Both elements are present here. The district court issued the injunction on July 15, 2011. Given its limited scope, the injunction was "fully and irrevocably carried out" as of August 31, 2011, when the plaintiffs failed to obtain enough signatures to qualify for the November ballot. *Enyart*, 630 F.3d at 1160. The parties "could not practically obtain appellate review of the district court order[ ]" within this time. *Id.* Furthermore, if the plaintiffs attempt another recall, they will be subject to the same $800 contribution limit. *See Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007) (holding that a challenge to a contribution limit applicable to the signature-gathering phase of a recall election was not rendered moot by the recall effort's failure to obtain sufficient signatures to place the recall question on the ballot because the controversy was capable of repetition, yet evading review); *Enyart*, 630 F.3d at 1159-60 (holding that the appeal of a "fully and irrevocably carried out" preliminary injunction was not moot because there was a reasonable expectation that the defendant would be subject to a preliminary injunction again in the future).[4,5]

---

[4]The recall effort incurred debt that remains outstanding. We acknowledge the possibility that plaintiffs' ability to retire that debt may be hampered if the injunction is lifted and the $800 contribution limit imposed by the challenged statute is applied to plaintiffs. This is another reason why the appeal is not moot.

[5]Considering the matter sua sponte, we are also satisfied that the plaintiffs' suit is ripe. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (describing the standard for determining whether a pre-enforcement challenge is ripe).

### III.  Discussion

### A.  Standard of Review

We review an order granting a preliminary injunction for an abuse of discretion. *See Katie A. ex rel. Ludin v. L.A. Cnty.*, 481 F.3d 1150, 1155 (9th Cir. 2007). "Under this standard, [a]s long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (alteration in original) (quoting *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1092 (9th Cir. 2010)) (internal quotation marks omitted). "This review is limited and deferential, and it does not extend to the underlying merits of the case." *Id.* (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009)) (internal quotation marks omitted). "The district court, however, necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011) (per curiam) (quoting *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003)) (internal quotation marks omitted). When the district court bases its decision on an erroneous legal standard, we review the underlying issues of law de novo. *See id.*

### B.  Analysis

A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). We have also articulated an alternate formulation of the *Winter* test, under which " 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of

a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Here, the district court determined that preliminary injunctive relief was appropriate by applying the first *Cottrell* factor (serious questions going to the merits) and the last three *Winter* factors (irreparable harm, the balance of equities and the public interest). The court did not find that the balance of hardships tipped sharply in the plaintiffs' favor, as the *Cottrell* test requires, or a likelihood of success on the merits, as the *Winter* test requires. The district court's analysis was therefore incomplete. As we explain below, however, the district court's error was harmless because plaintiffs' showing satisfies all four prongs of the *Winter* standard. Because the district court did not apply the first *Winter* factor (likelihood of success on the merits), we review that factor de novo. Given that the district court applied the final three *Winter* factors, we review the court's evaluation of those factors for an abuse of discretion.

## 1.  Likelihood of Success on the Merits

The plaintiffs contend the $800 limit on contributions to recall committees violates the First Amendment's guarantee of freedom of speech.

[3] Under the First Amendment, "contribution limitations are permissible as long as the Government demonstrates that the limits are 'closely drawn' to match a 'sufficiently important interest.' " *Randall v. Sorrell*, 548 U.S. 230, 247 (2006) (plurality opinion) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)); *see also Citizens for Clean Gov't*, 474 F.3d at 652 (applying this level of scrutiny to a contribution limit imposed during the signature phase of a recall effort).[6] The State con-

---

[6]We speculated in *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 691-92 n.4 (9th Cir. 2010), that after *Citizens*

tends the $800 contribution limit passes muster because it is closely drawn to match an important interest in the prevention of corruption or the appearance of corruption.

**[4]** The State is certainly correct that states have an important governmental interest in preventing the actuality or appearance of quid pro quo corruption. *See Thalheimer*, 645 F.3d at 1118 ("The Supreme Court has concluded that preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." (quoting *Long Beach Area Chamber of Commerce v. City of Long Beach* ("*Long Beach*"), 603 F.3d 684, 694 (9th Cir. 2010)) (internal quotation marks omitted)); *id.* at 1119 ("[T]he *Citizens United* decision . . . narrowed the scope of the anti-corruption rationale to cover quid pro quo corruption only, as opposed to money spent to obtain influence over or access to elected officials." (quoting *Long Beach*, 603 F.3d at 694 n.5)(internal quotation marks omitted)).

**[5]** This anticorruption interest justifies limits on contributions to political committees operated by candidates themselves. *See, e.g.*, *Buckley*, 424 U.S. at 26-27 (holding that the governmental interest in preventing the actuality and appearance of corruption was sufficient justification for a federal law limiting candidate contributions to $1,000). It also justifies limits on contributions to committees that, although formally separate from the candidate, are sufficiently close to the candidate to present a risk of actual or apparent corruption. Thus, the Supreme Court has sustained contribution limits as applied to political parties, because "the close relationship

---

*United v. FEC*, 130 S. Ct. 876, 898 (2010), all campaign funding restrictions may be subject to strict scrutiny. The Supreme Court has since reaffirmed, however, that "closely drawn" scrutiny applies to contribution limits. *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011).

between federal officeholders and the national parties, as well as the means by which parties have traded on that relationship, . . . have made all large soft-money contributions to national parties suspect." *McConnell v. FEC*, 540 U.S. 93, 154-55 (2003), *overruled on other grounds by Citizens United*, 130 S. Ct. 876. The Court similarly sustained contribution limits as applied to "multicandidate political committees." *See Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 197-98 (1981). The Court upheld these limits because multicandidate political committees "by definition . . . contribute directly to five or more candidates for federal office," and "this direct donor relationship presented a risk of actual or apparent quid pro quo corruption." *Thalheimer*, 645 F.3d at 1120 (citing *Cal. Med. Ass'n*, 453 U.S. at 185 n.1, 197); *see also Cal. Med. Ass'n*, 453 U.S. at 203 (Blackmun, J., concurring) ("Multicandidate political committees are therefore essentially conduits for contributions to candidates, and as such they pose a perceived threat of actual or potential corruption.").

**[6]** On the other hand, both this court and the Supreme Court have rejected contribution limits as applied to committees having only a tenuous connection to political candidates. In *Citizens United*, the Court held that a federal law restricting corporate and union spending on electioneering communications that support or oppose a political candidate could not be sustained by the anticorruption interest. The Court reasoned that the "absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." 130 S. Ct. at 908 (quoting *Buckley*, 424 U.S. at 47) (internal quotation marks omitted).

Similarly, in *Long Beach*, we invalidated contribution limits as applied to political action committees making indepen-

dent expenditures to support or oppose candidates for office. We explained that:

> the strength of the state's interest in preventing corruption is highly correlated to the nature of the contribution's recipient. Thus, the state's interest in the prevention of corruption — and, therefore, its power to impose contribution limits — is strongest when the state limits contributions made directly to political candidates. . . . As one moves away from the case in which a donor gives money directly to a candidate, however, the state's interest in preventing corruption necessarily decreases.

*Long Beach*, 603 F.3d at 696 (quoting *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 291 (4th Cir. 2008)). We observed that "[t]he Supreme Court has upheld limitations on contributions to entities whose relationships with candidates are sufficiently close to justify concerns about corruption or the appearance thereof." *Id.* Because the political action committees made independent expenditures and were "several significant steps removed from 'the case in which a donor gives money directly to a candidate,' " we held that the state's anti-corruption interest was insufficient to uphold the contribution limits. *Id.* at 696-99 (quoting *Leake*, 525 F.3d at 291).

**[7]** Like independent expenditure committees, recall committees in Washington have at most a tenuous relationship with candidates. The contribution limit here is thus materially indistinguishable from the limit we invalidated in *Long Beach*. Under Washington's recall system, political committees seeking to recall officials do not coordinate their spending with candidates for office. In the event a recall is successful, the successor to office is appointed by a governmental entity designated by state law — in this case, the Pierce County Council. *See* Wash. Rev. Code § 36.16.110; Pierce County, Wash., Charter art. 4, § 4.70. Thus, as Washington law is structured, expenditures by recall committees

are similar to independent expenditures. *See Citizens United*, 130 S. Ct. at 910 (defining independent expenditures as "political speech presented to the electorate that is not coordinated with a candidate"). Given that recall committees "do not coordinate or prearrange their independent expenditures with candidates, and they do not take direction from candidates on how their dollars will be spent," they do not have the sort of close relationship with candidates that supports a threat of actual or apparent corruption. *Long Beach*, 603 F.3d at 696.

Neither the State nor amici, moreover, has presented any evidence showing that contributions to recall committees in Washington raise the specter of corruption, and certainly not in this case. The Wisconsin Democracy Campaign and Washington Public Campaigns, as amici curiae, attempt to bolster the State's anticorruption rationale with several newspaper articles that describe alleged corruption in connection with recall efforts in states other than Washington. Most of the out-of-state recall efforts involve systems different from Washington's, in which a recall campaign is accompanied by an election to select the successor — a structure that does not exist in Washington. None of the articles describes a circumstance where, in a recall system like Washington's, in which successors are appointed, a recall committee or its members had a relationship with the state entity charged with appointing a successor that would raise the specter of corruption.[7] The only evidence of an interaction between the Recall Committee and the Pierce County Council, the appointing body, is

---

[7]The State contends the district court abused its discretion by ruling on the plaintiffs' motion for summary judgment without giving the State a greater opportunity to conduct discovery and develop the record, relying on *Citizens for Clean Government*. This argument is without merit. *Citizens for Clean Government* does not limit a district court's authority to rule on a preliminary injunction, a decision that is necessarily based on an incomplete record. Here, the State never filed a request for specific, expedited discovery and, therefore, we cannot conclude that the district court abused its discretion by ruling on the injunction based on the evidence that was before it.

the State's allegation that one Council member posted on the Recall Committee's Facebook page a description of the procedures that would take place if the recall campaign were successful. There is no evidence that the Recall Committee would have any influence on the Council's appointment decision upon a successful recall. For this reason, "[o]n this record, . . . an exchange of political favors for uncoordinated expenditures remains a hypothetical possibility and nothing more." *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 498 (1985).

**[8]** In sum, the State did not identify a sufficiently important interest to justify the $800 limit on contributions to recall committees. The first *Winter* factor — likelihood of success on the merits — thus supports issuance of the preliminary injunction.[8,9]

---

[8]Plaintiffs' likelihood of success might be different if recall elections in Washington were accompanied by an election for the successor, as is the case in many states, and a recall committee coordinated its expenditures with one of the candidates for office. That circumstance would be similar to cases in which contribution limits have been upheld. *See, e.g.*, *McConnell v. FEC*, 540 U.S. 93 (2003); *Cal. Med. Ass'n v. FEC*, 453 U.S. 182 (1981).

Furthermore, as our analysis implies, the outcome might be different if there were evidence that contributions were being made with a "wink and a nod" from Council members indicating that a particular candidate would be appointed. *Long Beach*, 603 F.3d at 697 n.7.

[9]In a petition for rehearing, the State argues that allowing it to limit contributions to incumbent political officials opposing a recall, but prohibiting it from enforcing contribution limits against recall committees supporting the recall would lead to disproportionate influence by recall committees. The possibility that independent committees will make expenditures disproportionate to political candidates or incumbents, however, is simply a consequence of *Citizens United* that is now a feature of all political campaigns. *See Citizens United*, 130 S. Ct. at 910 ("Reliance on a 'generic favoritism or influence theory . . . is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle.' " (quoting *McConnell*, 540 U.S. at 296)). The State has not provided any evidence that Washington's recall elections present a special circumstance in which "[t]he appearance of influence or access" would "cause the electorate to lose faith in our democracy." *Id.*

In so concluding, we recognize that the State has a strong interest in "help[ing] citizens make informed choices in the political marketplace." *Citizens United*, 130 S. Ct. at 914 (quoting *McConnell*, 540 U.S. at 197) (internal quotation marks omitted). One important method of doing so is requiring disclosure of *who* is financing a ballot campaign. *See Family PAC v. McKenna*, Nos. 10-35832, 10-35893, 2011 WL 6826338, at *5-6 (9th Cir. Dec. 29, 2011). Disclosure enables the electorate to "give proper weight to different speakers and messages." *Citizens United*, 130 S. Ct. at 916. In the context of a recall initiative, therefore, the State's additional, specific interest in preventing corruption can at least in part be addressed through disclosure requirements.

## 2. Irreparable Harm, Balance of the Equities and the Public Interest

The district court properly exercised its discretion in concluding that the remaining *Winter* factors also support issuance of the injunction.

**[9]** With respect to the second factor, irreparable harm, the district court correctly noted that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" and that "harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and [a] delay of even a day or two may be intolerable." *Thalheimer*, 645 F.3d at 1128 (alterations in original) (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)) (internal quotation marks omitted). The district court's conclusion that the plaintiffs would suffer irreparable harm from the contribution limit due to the limited time they had to gather signatures thus was not an abuse of discretion.

**[10]** Nor did the court err in concluding that the balance of equities and public interest favor an injunction. It was within the district court's discretion to conclude that the "public

interest in upholding free speech and association rights outweighed the interest in continued enforcement of these campaign finance provisions" after weighing the relevant considerations. *Id.* at 1128-29.

## IV.   Conclusion

The district court properly granted the preliminary injunction prohibiting enforcement of the $800 contribution limit against the plaintiffs.[10]

**AFFIRMED.**

---

[10]We note that the district court issued a narrow injunction, which prohibits the enforcement of Wash. Rev. Code § 42.17A.405(3) only as to the plaintiffs in this proceeding. Nothing in our opinion should be construed as expanding the scope of that injunction.