WALLACE, Circuit Judge,
dissenting in part:
I do not disagree with the majority’s disposition of Appellants’ facial challenges. The majority is correct that our precedent, including our decision in Family PAC v. McKenna, 685 F.3d 800 (9th Cir.2012), forecloses those challenges. However, I disagree with the majority’s determination that Appellants’ as-applied challenges are nonjusticiable.
The majority offers three rationales for its holding that Appellants’ as-applied challenges are non-justiciable. First, the majority concludes that those challenges are moot, insofar as various Internet websites have republished the information contained in Appellants’ disclosures. (Majority Op. at 834.) Second, the majority concludes that Appellants cannot avail themselves of the “capable of repetition, yet evading review” exception to mootness. The majority reaches this conclusion on the ground that this exception only applies to cases in which there is an “inherent limit” on the “duration of [the] controversy,” and faults Appellants for not seeking and obtaining immediate relief from our court after the district court denied their motion for a temporary restraining order. (Id. at 836-38.) Finally, the majority concludes that insofar as Appellants seek an injunction exempting them from complying with future disclosure requirements, this claim is not ripe because it rests on merely speculative contentions from Appellants about their future activities. (Id. at 838^41.)
For the reasons stated below,' I disagree with each of these three conclusions. Accordingly, I respectfully dissent from the majority’s decision to dismiss Appellants’ as-applied challenges as non-justiciable.
I.
The majority holds that Appellants’ request for an injunction requiring California to purge all records of their disclosures does not “present a live controversy.” (Majority Op. at 834.) The majority’s reasoning as to this issue relies on our decision in Doe No. 1 v. Reed, 697 F.3d 1235 (9th Cir.2012). However, I believe that Reed was wrongly decided, as Judge Randy Smith explained in his concurrence in that case. See id. at 1241 (N.R. Smith, J., concurring in the judgment).
Reed involved facts much like those presented in this appeal. The plaintiffs in that case sought an injunction preventing the State of Washington from releasing to the public the names of people who signed petitions supporting a referendum. Id. at 1237. Because those petitions were “already widely available on the [I]nternet,” the majority dismissed the case as moot. Id.
*842 While Judge Randy Smith concurred with the judgment, he wrote separately to explain that “Supreme Court precedent makes clear” that the case was not moot, insofar as “continued government disclosure of confidential materials can be prevented.” Id. at 1241. As he explained, our court could have afforded the plaintiffs a “viable remedy, albeit a much less effective remedy than they originally sought.” Id. As he further explained, there were several respects in which a “viable remedy” was available from us. First, our court could have “fashion[ed] some form of meaningful relief’ by “ordering the [State] to destroy or return any and all copies [of the petitions] it may have in its possession,” because the State’s “continued possession of those materials” itself constituted an “affront to the [citizen’s] privacy.” Id. at 1242-43, quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12-13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). Second, he pointed out that the majority had “mistakenly assume[d] that every person in the United States or the State of Washington has access to a computer to search for [the] petitions,” whereas in actuality a significant percentage of the public either lacks access to the Internet or “would not know where to look for [the] petitions” on the Internet. Id. at 1243. Thus, by granting the plaintiffs the injunctive relief they requested, our court could have “prevented] further government disclosure to individuals without access or desire to download petitions from non-government websites,” which would have slowed or reduced “the dissemination of potentially private information.” Id., citing Massachusetts v. E.P.A., 549 U.S. 497, 525, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007).
I agree with the reasoning of Judge Smith’s concurrence in Reed. I write here to emphasize that the Supreme Court’s decision in Church of Scientology of California v. United States clearly states that the type of claim raised by the plaintiffs in Reed, and by Appellants in this case, is not moot. There, the Court acknowledged that there are circumstances in which the judiciary “may not be able to return the parties to the status quo ante,” because there is “nothing a court can do to withdraw all knowledge or information” once that information has been disseminated. Church of Scientology, 506 U.S. at 12-13, 113 S.Ct. 447. Nonetheless, Church of Scientology held that “a court can fashion some form of meaningful relief’ in such circumstances. Id. The Court stated that “even if the Government retains only copies of the disputed materials,” a citizen “still suffers injury by the Government’s continued possession of those materials, namely, the affront to the [citizen’s] privacy.” Id. at 13, 113 S.Ct. 447. Accordingly, Church of Scientology held that “a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession,” and further held that the “availability of this possible remedy is sufficient to prevent [a] case from being moot.” Id.
The majority in Reed failed to recognize that Church of Scientology is controlling. Instead, it ignored the holding of Church of Scientology on the basis of its “commonsense conclusion that once a fact is widely available to the public, a court cannot grant any ‘effective relief to a person seeking to keep that fact a secret.” Reed, 697 F.3d at 1240. It should go without saying, however, that the “commonsense conclusion” of two circuit judges cannot trump an express holding of the Supreme Court. Church of Scientology is still the controlling law of all circuits, including the Ninth Circuit. Reed cannot change that. Indeed, the majority should have inter *843 preted Reed in such a way as to render it consistent with Church of Scientology.
As Church of Scientology makes clear, we could order the State of California to “destroy or return any and all copies” of Appellants’ disclosures that the State “may have in its possession.” Church of Scientology, 506 U.S. at 13, 113 S.Ct. 447. Thus, under binding Supreme Court precedent, there is available to us a “possible remedy” that is “sufficient to prevent this case from being moot.” Id.
The majority goes the opposite direction, and attempts to distinguish Church of Scientology by stating that Church of Scientology involved “a finite set of tangible records that had only been disclosed to a party to the action,” whereas this case involves records that have been “widely available on the Internet for several years.” (Majority Op. at 835 n. 3.) Thus, the majority concludes that we cannot provide “the ‘effective relief that the Supreme Court recognized in Church of Scientology.” (Id.) But this conclusion simply repeats the error of the panel in Reed. As pointed out above, Church of Scientology clearly holds that a case is not moot if we can “effectuate a partial remedy by ordering the Government to destroy or return any and all copies [of records] it may have in its possession.” Church of Scientology, 506 U.S. at 13, 113 S.Ct. 447. The fact that records may have been “widely available” on the Internet is not relevant to the inquiry mandated by Church of Scientology. Again, that inquiry is whether we can “fashion some form of meaningful relief’ by remedying the “injury” to citizens caused by the “Government’s continued possession” of records, where that possession is an “affront” to the citizen’s privacy. Id. at 12-13, 113 S.Ct. 447.
Church of Scientology teaches that courts should not declare a case moot if “any effective relief may be granted.” Forest Guardians v. Johanns, 450 F.3d 455, 461 (9th Cir.2006) (citation omitted). As one of our sister circuits has explained, this is a “high threshold for judging a case moot,” insofar as it requires that we find an appeal “moot in the constitutional sense only if events have taken place that make it impossible for the court to grant any effectual relief whatever.” United Artists Theatre Co. v. Walton, 315 F.3d 217, 226 (3d Cir.2003) (internal quotation marks and citation omitted). Both Reed and the majority in this case err by effectively lowering this standard, in contravention of Church of Scientology. That opinion tells us that we should find a case moot only if it is “impossible” for us to grant “any effectual relief whatever.” Church of Scientology, 506 U.S. at 12, 113 S.Ct. 447. By contrast, the majority holds that this case is moot because it is unlikely that we will be able to provide significant effective relief. But that is not the standard set by Church of Scientology.
For the reasons stated above, and in accordance with the well-reasoned concurrence of Judge Randy Smith in Reed, I conclude that Reed was wrongly decided. Under the governing law of Church of Scientology, Appellants’ as-applied challenges are not moot. The majority should have distinguished Reed and followed Church of Scientology, not the opposite.[1]
*844 II.
Having concluded that Appellants’ as-applied challenges are moot, the majority proceeds to consider whether those challenges may nonetheless be subject to the exception to mootness for injuries that are “capable of repetition, yet evading review.” As discussed above, I do not believe that the as-applied challenges are moot. But even if they were moot, I believe that the majority errs in concluding that the “capable of repetition, yet evading review” exception to mootness does not apply to this case.
The majority correctly states that the “capable of repetition, yet evading review” exception applies where: “(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.” Fed. Election Comm’n v. Wis. Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). In my view, Appellants satisfy both of these requirements. I consider each in turn.
A.
As to the first requirement, Appellants filed their original complaint on January 7, 2009, two months after the election on Proposition 8 took place. Under California law, Appellants were required to disclose the names of their contributors by January 31, 2009. As the majority observes, the district court denied Appellants’ motion for a preliminary injunction on January 30, 2009. (Majority Op. at 831.) The next day, Appellants complied with the law and made their disclosures. (Id.) Such a short span of time is clearly “in its duration too short” for a claim of this nature to be “fully litigated.” Wis. Right to Life, 551 U.S. at 462, 127 S.Ct. 2652.
The majority does not contend that this claim could have been “fully litigated” in so brief a time. Rather, it faults Appellants for failing to seek preliminary injunctive relief, and concludes that their failure to do so precludes this claim from falling under the “capable of repetition, yet evading review” exception to mootness. In reaching this conclusion, the majority relies upon our opinions in Headwaters, Inc. v. Bureau of Land Management, 893 F.2d 1012 (9th Cir.1990), and Bunker Ltd. Partnership v. United States, 820 F.2d 308 (9th Cir.1987). However, I believe that these opinions do not preclude us from deciding that the “capable of repetition, yet evading review” exception applies to this case.
In Headwaters, we stated that “[wjhere prompt application for a stay pending appeal can preserve an issue for appeal, the issue is not one that will evade review.” Headwaters, 893 F.2d at 1016. Likewise, in Bunker we stated that “a party may not profit from the ‘capable of repetition, yet evading review’ exception to mootness, where through his own failure to seek and obtain a stay he has prevented an appellate court from reviewing the trial court’s decision.” Bunker, 820 F.2d at 311 (emphasis added). But the abstract proposition stated in both of these cases — i.e., the proposition that if a party “fail[s] to seek and obtain a stay,” that party may not avail itself of the “capable of repetition, yet evading review” exception to mootness— does not speak to the particular facts of this case. As pointed out above, the district court issued its order on Appellants’ motion for a preliminary injunction on January 30, 2009, while Appellants were required to make their disclosures by January 31, 2009. Thus, under the majority opinion, Appellants would have had a single day to “seek and obtain a stay” from our court in order to “profit from the ‘capable of repetition, yet evading review’ *845 exception to mootness.” Id. This draconian constraint is not established by the opinions cited by the majority, which merely speak in general terms of a party’s obligation to “seek and obtain a stay” so as to enable our court to review the lower court’s decision.
A recent case in one of our sister circuits emphasizes the unfair position in which Appellants have been placed by the majority’s holding as to this issue. On December 20, 2013, the District of Utah held that Amendment 3 of the Utah Constitution is unconstitutional, and enjoined the State of Utah from enforcing various statutory provisions that “prohibit a person from marrying another person of the same sex.” Kitchen v. Herbert, 961 F.Supp.2d 1181, 1216 (D.Utah 2013). A few hours after that order was issued, the State of Utah filed a motion to stay the order. See Kitchen v. Herbert, 2013 WL 6834634, at *1 (D.Utah Dec. 23, 2013). Although the district court ordered expedited briefing, it did not rule on the motion to stay for three days. See id. It was not until two weeks later that the Supreme Court issued a stay pending final disposition of the appeal by the Tenth Circuit. See Herbert v. Kitchen, — U.S. -, 134 S.Ct. 893, 893, 187 L.Ed.2d 699 (2014).
As this example illustrates, it is simply not realistic to expect a party to “seek and obtain a stay” within the span of a single day. Yet that is what the majority effectively requires. On the facts of this case, I would hold that our decisions in Headwaters and Bunker do not prohibit Appellants from satisfying the first requirement of the “capable of repetition, yet evading review” exception to mootness.
The majority asserts that the analysis above errs by focusing on the wrong “time-frame” for determining whether “a controversy inevitably ‘evades review.’ ” (Majority Op. at 838 n. 4.) The majority’s contrary analysis hinges on its discussion of “types of controversies” that are “inherently limited in duration.” (Id. at 836.) The majority argues that the mootness exception discussed here only applies to “inherently limited” controversies, which it defines as those that “will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible.” (Id. at 836.)
To my mind, the majority’s discussion of an “inherently limited” controversy is somewhat metaphysical. The present controversy unquestionably had an “inherent limit”: namely, January 31, 2009, when Appellants were required by law to make their disclosures. In the same way, a controversy involving a law that “inhibits a political candidate or party’s ability to win an election” has, as its “inherent limit,” the date of that election. (Id. at 836.) Whatever distinction might be drawn between these two scenarios, it cannot be that only the latter has an “inherent limit.”
Although the majority does not say as much, it appears to posit a distinction between controversies whose “inherent limit” is a real-world event and those whose “inherent limit” is an artificial creation of the legal system. An example of the former, which the majority regards as “[n]o-tabl[e],” is pregnancy, insofar as the date on which a baby is born is independent of anything the law might decree. (Id.) By contrast, the limit in this case was the disclosure deadline mandated by California state law.
This distinction is not established by the cases the majority cites. Moreover, I believe that this distinction, although crucial to the majority’s holding, cannot be reconciled with our precedent. In effect, the majority has established a new test for determining whether this exception to mootness applies to a given case. Under *846 the newly invented test of the majority, in cases in which the “inherent limit” on the controversy derives from some real-world event — such as a pregnancy — the exception will invariably apply. By contrast, in cases in which the “inherent limit” derives from an event that may be delayed via court order, the exception will never apply, because it will always be possible for a “court [to] ensure that a live controversy persists until the action is fully litigated by enjoining the challenged conduct until the litigation concludes.” (Id. at 836.)
Although such a test may have a certain intuitive appeal, it is not the law of our circuit, as the majority’s own citations indicate. The majority relies on Bunker, which held that a party “may not profit” from this exception to mootness “where through his own failure to seek and obtain [prompt relief] he has prevented [an] appellate court from reviewing the trial court’s decision.” (Id. at 844, citing Bunker, 820 F.2d at 311 (emphasis added).) This citation demonstrates the obvious novelty of the test introduced by the majority. In Bunker, we held that the significant factor, in determining whether this exception to mootness applies, is a party’s “own failure to seek and obtain” relief. That is, in our analysis of this exception to mootness we looked to the party’s own diligence in seeking relief, rather than evaluating the case in the abstract and determining whether it was the “type[] of controversy]” that is invariably “inherently limited in duration.” (Id. at 836.)
Put another way, the majority holds that this exception to mootness is only available in cases whose “limited duration ... is clear at the action’s inception.” (Id. at 836.) But the cases relied upon by the majority consider a party’s “failure to obtain prompt relief’ during an action. (Id. at 837.) If it were true that the question of whether this exception to mootness applies could be resolved solely by considering an action in abstract form from its “inception,” then there would have been no reason for our prior cases to consider a party’s “failure to seek and obtain” relief over the course of litigating the action. The new majority rule is inconsistent with our prior case law.
Thus, the majority’s holding here clearly creates new law for our circuit, and does so in a way that cannot be reconciled with our court’s precedent. The majority relies on Reed for its reasoning as to this point. (Id. at 836-37.) I quote below the entirety of the discussion of this issue in Reed:
There was no inherent limit on the duration of this controversy. The district court granted a temporary restraining order the day after Plaintiffs filed their complaint in July 2009. The petitions were not released until October 2011. The release was not timed to a 27-month deadline inherent in this type of petition. And unlike [other] election-related cases granting an exception ... the issues in this case were not moot once the election was held, [citation omitted] Because it is reasonably foreseeable that this type of challenge could be fully litigated before becoming moot, this type of challenge does not evade review.
Reed, 697 F.3d at 1240-41.
Whatever might be said of this holding, it does not provide a justification for the novel test that the majority has invented.
In similar contexts, we have not relied upon the distinction used by the majority to preclude review of this case under this exception to mootness. Our recent decision in Enyart v. National Conference of Bar Examiners, Inc., 630 F.3d 1153 (9th Cir.2011), is instructive in this regard. In Enyart, we considered an appeal from preliminary injunctions entered by the dis- *847 triet court. Id. at 1159. Those injunctions required the National Conference of Bar Examiners to allow the plaintiff to take certain bar examinations using “assis-tive software.” Id. at 1156. We held that even though those injunctions only related to particular administrations of those examinations, “which [had] since come and gone,” the appeals were not moot because “the situation [was] capable of repetition, yet evading review.” Id. at 1159. As we explained, “[d]ue to the limited duration of [the] injunctions,” and in particular because “little more than a month passed between the issuance of the injunctions and the final execution of their terms,” it was “practically” impossible for the appellant to obtain review of the district court’s orders. Id. at 1160.
Thus, in Enyart, we held that a period of “little more than a month” rendered it “practically” impossible for a party to obtain appellate review. Id. By the same logic, it was almost certainly impossible for Appellants to obtain review from us of the district court’s order on Appellants’ motion for a preliminary injunction in the single day available to them.
The majority attempts to distinguish Enyart by stating that it “dealt with an issue of an entirely different nature.” (Majority Op. at 887-38 n. 4.) The point of my discussion of Enyart, however, is that it considered whether a party could “practically obtain appellate review” of a district court order. Enyart, 630 F.3d at 1160. This reinforces my point that the relevant inquiry, when considering this exception to mootness, is a pragmatic one — namely, whether it is practically possible for a party to obtain the appellate relief it needs— rather than the metaphysical one mandated by the majority.
In sum, because it was practically impossible under the facts of this case for Appellants to obtain appellate review, I would hold that Appellants have satisfied the first requirement of the “capable of repetition, yet evading review” exception to mootness.
B.
In light of its conclusion that Appellants failed to satisfy the first requirement of the “capable of repetition, yet evading review” exception to mootness, the majority does not address the second requirement — namely, the requirement that there must be a “reasonable expectation that the same complaining party will be subject to the same action again.” Wis. Right to Life, Inc., 551 U.S. at 462, 127 S.Ct. 2652. Because I believe the majority’s conclusion as to the first requirement is erroneous, I proceed to consider the second requirement as well, so as to demonstrate that Appellants have completely satisfied the requirements for this exception to mootness.
In this case, Appellants have alleged that they intend to engage in future political activities against same-sex marriage and that they intend to continue soliciting donations to advance that position. Their Third Amended Complaint alleges that “Committee Plaintiffs believe potential contributors have been and will continue to be discouraged from contributing to their committees as a result of the threats and harassment directed at any individual supporting a traditional definition of marriage” (emphasis added). Moreover, at oral argument, counsel for Appellants stated that future ballot initiatives are being circulated and that Appellants’ committees are ready to participate in such initiatives by filing amendment documents, at which point they would resume soliciting donations.
Under our precedent, this is sufficient to show a “reasonable expectation that [Ap *848 pellants] will be subject to the same action again.” Id. The case of Wolfson v. Brammer, 616 F.3d 1045, 1054 (9th Cir.2010), is exactly on point. Wolfson involved an appellant who was a “candidate for judicial office in Arizona.” Id. at 1051. The district court had dismissed the case as moot, insofar as Wolfson had lost his election and the district court found that he “did not intend to seek judicial office in the next election.” Id. at 1052. We reversed, holding that the case was not moot under the “capable of repetition yet evading review” exception. Id. at 1052, 1054. In particular, we observed that Wolfson had to “establish a reasonable expectation that he [would] be subjected to the same action or injury again.” Id. We concluded that he had established such a “reasonable expectation.” Id. at 1055. In reaching this conclusion, which was predicated on our assessment that there was “more than sufficient evidence to support a finding that Wolfson intends to seek judicial office in the future,” we relied on two facts. Id. at 1054-55. First, we observed that “Wolf-son’s complaint expresses an intention to seek judicial office in the future, and a desire to engage in prohibited conduct ... in future judicial elections.” Id. Second, we observed that Wolfson had “elimi-nat[ed] any doubts” as to this issue by “representing] in the present appeal that he intends to seek judicial office in a future election.” Id.
The same type of evidence is present in this case. First, as stated above, Appellants’ complaint expresses an intention to engage in similar conduct in the future, insofar as it alleges that future contributors “will continue to be discouraged.” Second, as is also pointed out above, Appellants’ counsel represented in the present appeal that Appellants intend to engage in similar campaigns against same-sex marriage in the future. Therefore, under Wolfson, Appellants have established a “reasonable expectation” that they will be subject to the same action again, and thus have satisfied the second requirement of the “capable of repetition, yet evading review” exception to mootness.
III.
Finally, the majority invokes the ripeness doctrine to conclude that Appellants’ “claim for forward-looking relief’ is non justiciable. (Majority Op. at 838.) The majority correctly identifies our guidelines for the ripeness inquiry, which we articulated in our en banc opinion in Thomas v. Anchorage Rights Commission, 220 F.3d 1134 (9th Cir.2000) (en banc); see also Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 845, 849 (9th Cir.2007) (following the ripeness analysis from Thomas in considering a “pre-enforcement challenge” to two canons of the Alaska Code of Judicial Conduct); Jacobus v. Alaska, 338 F.3d 1095, 1104-05 (9th Cir.2003) (applying the ripeness analysis from Thomas in an action involving a challenge to a state campaign finance law). As Thomas explains, “the ripeness inquiry contains both a constitutional and a prudential component.” Thomas, 220 F.3d at 1138 (citation omitted). First, there is a constitutional aspect to the ripeness inquiry, under which we ask three questions: (1) “whether the plaintiffs have articulated a ‘concrete plan’ to violate the law in question”; (2) “whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings”; and “the history of past prosecution or enforcement under the challenged statute.” Id. at 1139. Second, there is a prudential aspect to the ripeness inquiry, under which we consider “the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.” Id. at 1141.
*849 In light of the ripeness inquiry described by Thomas, and in light of our consideration of that inquiry in a very similar context in California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088 (9th Cir.2003), I believe that Appellants’ claim is ripe.
In Getman, we considered a similar challenge to California’s campaign finance disclosure laws. Id. at 1091-92. As a threshold matter, we determined whether that challenge was ripe. Id. at 1093-95. The district court, following the approach set forth in Thomas, had concluded that the action was not ripe, insofar as California was not investigating the plaintiff for violations of the state’s campaign finance disclosure law and had not threatened the plaintiff "with prosecution. Id. at 1094. We held that the district court’s interpretation of Thomas “must be rejected.” Id. In doing so, we emphasized that in the context of First Amendment challenges, the “Supreme Court has endorsed what might be called a ‘hold your tongue and challenge now approach rather than requiring litigants to speak first and take their chances with the consequences.” Id. (citation omitted). We determined that the “intended communication” that was the subject of the litigation was “arguably subject” to the “reporting and disclosure requirements” of California’s Political Reform Act (PRA) — i.e., the same act that is at issue in this case. Id. at 1095. From that fact alone, we concluded that the plaintiff had “suffered an injury as a result of the alleged unconstitutional statute,” which meant that its claim was “necessarily ripe for review.” Id. Likewise, here, it is beyond question that Appellants’ intended future activities, as discussed above, are subject to the reporting and disclosure requirements of the PRA, which in turn means that their claims are “necessarily ripe for review.”
Although the majority pays lip service to our ripeness analysis in Thomas, its actual resolution of this issue is largely reliant on the Supreme Court’s decision in Renne v. Geary, 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991), which predates our opinion in Thomas. In my view, the majority’s reliance on Renne is misguided. In the portion of Renne discussed by the majority, the Court stated that it could “discern no ripe controversy in the allegations that respondents desire to endorse candidates in future elections,” insofar , as the respondents did not “allege an intention to endorse any particular candidate, nor that a candidate wants to include a party’s or committee member’s endorsement in a candidate statement.” Id. at 321, 111 S.Ct. 2331. The Court went on to assert that the respondents had failed to “specify what form [the] support or opposition [of a particular candidate] would take.” Id. at 322, 111 S.Ct. 2331. Here, by contrast, we know that Appellants have a very particular intention, and that they have specified the form their opposition would take: they intend to oppose same-sex marriage via ballot measures. Thus, because we held that the post-Renne case of Getman was ripe, I would hold that this case is ripe.
My view that Renne does not preclude us from holding that this case is ripe is further supported by the Tenth Circuit’s well-reasoned opinion in New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir.1995). In Richardson, the Tenth Circuit held that a plaintiffs constitutional challenge to a state campaign finance law was ripe. Id. at 1497. In particular, the court held that the “facts presented to the district court undoubtedly show[ed that] the existence of the New Mexico statute [had] created a direct and immediate dilemma with respect to [the plaintiffs] exercise of his First Amendment liberties.” Id. at 1500. In this re *850 gard, the court considered affidavits submitted to the district court showing that the plaintiff had solicited campaign contributions in the past, and that the statute had “reduc[ed] the likelihood” that the plaintiff would be “able to obtain funds from contributors” in the future. Id. On the basis of these facts, the court concluded that it was “clear to us that the mere existence of the New Mexico statute has caused [the plaintiff] to engage in the activity of fund raising differently than he has in the past, rendering his ability to raise funds, and thus exercise his constitutionally protected rights, less effective.” Id. at 1500-01. Therefore, the court concluded that there was “nothing speculative or uncertain about the harm to [the plaintiffs] fund raising activities brought about by” the statute, which in turn meant that the case was ripe. Id. at 1501-02.
Just as in Richardson, in this case the record contains ample affidavits submitted to the district court showing that Appellants have solicited contributions in the past, and that the State of California’s disclosure of contributors’ identifying information has reduced the likelihood that Appellants will be able to obtain funds from contributors in the future. Thus, as the Tenth Circuit concluded in Richardson, I would hold here that there is nothing “speculative or uncertain about the harm” to Appellants’ fund-raising activities caused by California’s campaign disclosure law, and that their claim is therefore ripe.
A separate reason for concluding that Renne does not block Appellants’ claim is also provided by the Tenth Circuit’s opinion in Richardson. The court in Richardson expressly considered Renne, and concluded that the case before it was ripe notwithstanding Renne. As the Tenth Circuit explained, Renne’s holding was largely predicated on the particular “facts presented” in that case, and especially on “the dubiousness of plaintiffs’ standing to bring the case.” Id. at 1501 n. 1. The Renne plaintiffs’ standing was “dubious[ ]” because they were a “group of individual voters” who were challenging a law that “regulated political parties and central committees.” Id. That is, because the law at issue in Renne “contained no enforcement mechanism against individual voters and, indeed, did not even regulate the conduct of individual voters, it follow[ed] logically that [the plaintiffs] faced no threat of prosecution by virtue of that [law].” Id.
The Tenth Circuit found further support for this interpretation of Renne in Justice Stevens’s concurring opinion. Justice Stevens stated there that “[i]f such a challenge had been brought by a political party or a party central committee [i.e., by the type of plaintiff to whom the law was addressed], and if the complaint had alleged that these organizations wanted to endorse, support, or oppose a candidate for nonpartisan office but were inhibited from doing so because of the [law], the case would unquestionably be ripe.” Id., quoting Renne, 501 U.S. at 325, 111 S.Ct. 2831 (Stevens, J., concurring). Justice Stevens made it clear that his reservations about ripeness in the case were predicated on his belief that “an individual member of a party or committee may [not] sue on behalf of such an organization.” Renne, 501 U.S. at 325, 111 S.Ct. 2331 (citation omitted). Here, by contrast, it is clear that the California law at issue — i.e., the PEA— regulates Appellants’ conduct, which means that the case “unquestionably [is] ripe.” Id.
The majority attempts to distinguish both Getman and Richardson by asserting that, “[u]nlike” in those cases, “any opinion that we could issue regarding Appellants’ forward-looking claims would require us to *851 speculate about the nature of events that might take place at some unknown time in the future.” (Majority Op. at 840.) But such “speculation” was present in Getman. In Getman, we held that a First Amendment challenge to a California’s PRA was ripe after concluding that the plaintiffs “fear” that “enforcement proceedings might be initiated” by the State of California was reasonable. Getman, 328 F.3d at 1094-95. That conclusion, obviously, was “speculative,” insofar as the State had never actually “evinced an intent to prosecute [the plaintiff] for its voter publications.” Id. at 1093.
Finally, the majority’s rigid approach to the ripeness analysis errs by overlooking the well-established principle that in the First Amendment context, courts should apply the “requirements of ripeness ... less stringently.” Wolfson, 616 F.3d at 1058; see also Sullivan v. City of Augusta, 511 F.3d 16, 31 (1st Cir.2007) (explaining that “when free speech is at issue, concerns over chilling effect call for a relaxation of ripeness requirements”); Peach-lum v. City of York, 333 F.3d 429, 434-35 (3d Cir.2003) (explaining that First Amendment claims are “subject to a relaxed ripeness standard,” and that courts have “repeatedly shown solicitude for First Amendment claims because of concern that, even in the absence of a fully concrete dispute, unconstitutional statutes ... tend to chill protected expression among those who forbear speaking because of the law’s very existence”); U.S. West, Inc. v. Tristany 182 F.3d 1202, 1209 (10th Cir. 1999) (explaining that “any chilling effect [a] statute may have on [a party’s] First Amendment rights counsels in favor of ripeness”).
In sum, I conclude that Appellants’ forward-looking claims are ripe. As discussed above, I base this conclusion on our post-Renne precedents discussing ripeness in general, such as Thomas; our determination in Getman that a similar challenge to California’s campaign finance disclosure laws was ripe; the Tenth Circuit’s decision in Richardson, along with its crucial distinguishing of Renne; and the general principle that the requirements for ripeness should be relaxed in the context of First Amendment claims.
IV.
The First Amendment “bars subtle as well as obvious devices by which political association might be stifled.” NAACP v. Overstreet, 384 U.S. 118, 122, 86 S.Ct. 1306, 16 L.Ed.2d 409 (1966) (Douglas, J., dissenting from dismissal of writ of certio-rari). Regardless of our views on the merits of the controversy, the public marketplace of ideas should not be unnecessarily burdened. This case is justiciable. Therefore, I dissent.[2]

. At pages 830-31 of the majority opinion, a brief history of the litigation over the merits of Proposition 8 is provided. I add here more detail regarding the problems that arose during that litigation.
Before the district court, the Attorney General of California took the position that Proposition 8 was unconstitutional under the federal Constitution, while the other government defendants "refused to take a position on the merits” and "declined to defend Proposition 8.” Perry v. Schwarzenegger, 704 F.Supp.2d 921, 928 (N.D.Cal.2010). After the district court held that Proposition 8 was unconstitutional under the federal Constitution, California's Attorney General decided not to appeal that decision. See generally Hollingsworth v. Perry, — U.S.-, 133 S.Ct. 2652, 2659-60, 186 L.Ed.2d 768 (2013). Subsequently, the California Supreme Court held that California *852 law authorizes the "official proponents” of a voter-approved initiative to "appeal a judgment invalidating the measure when the public officials who ordinarily defend the measure or appeal such a judgment decline to do so.” Perry v. Brown, 52 Cal.4th 1116, 1127, 134 Cal.Rptr.3d 499, 265 P.3d 1002 (2011). After the Supreme Court granted certiorari, however, it concluded that the official proponents of Proposition 8 lacked Article III standing to appeal the district court's judgment. Hollingsworth, 133 S.Ct. at 2668. Accordingly, the Supreme Court vacated the Ninth Circuit's decision which had affirmed the district court. Id. at 2660, 2668.
As a consequence of Hollingsworth, the only federal court decision remaining that addresses the merits of Proposition 8 is the district court's decision, which by definition is without precedential authority. See, e.g., Howard v. Wal-Mart Stores, Inc., 160 F.3d 358, 359 (7th Cir.1998). Thus, the only precedential appellate decision addressing the merits of Proposition 8 is the California Supreme Court’s opinion in Strauss v. Horton, 46 Cal.4th 364, 93 Cal.Rptr.3d 591, 207 P.3d 48 (2009), which held that challenges to Proposition 8 "lack[ed] merit” under California law. Id. at 391, 93 Cal.Rptr.3d 591, 207 P.3d 48. In fact, Strauss's holding that Proposition 8 was a lawful amendment to the California Constitution is the final and only appellate decision on the merits of Proposition 8. Id.
To my knowledge, nothing in California law requires the Attorney General to defend the Constitution of California, and other duly enacted laws of the State of California, from challenges in the courts. Nonetheless, it seems clear that the confusion created by the decisions discussed above, and the resulting abrogation of the federal courts’ decisions due to lack of standing, could have been avoided if the Attorney General of California had defended Proposition 8 on appeal in the federal courts. This suggests that the State of California would do well to consider legislating a process whereby the State's elected officials would be obliged to defend the State’s duly enacted laws in court, rather than leaving it to the unfettered discretion of the Attorney General to pick and choose which of the State's laws he or she elects to defend.