Opinion by Judge MILAN D. SMITH, Jr.; Dissent by Judge WALLACE.
OPINION
M. SMITH, Circuit Judge:
Appellants bring facial and as-applied challenges to California’s Political Reform Act of 1974, Cal. Gov.Code. §§ 81000-91014(PRA), and seek (1) an injunction exempting them from the PRA’s future reporting deadlines, and (2) declaratory and injunctive relief requiring the State to purge all records of Appellants’ past PRA disclosures. The district court granted summary judgment in favor of the State of California on all counts. We affirm the district court’s judgment with regard to Appellants’ facial challenges. We dismiss this appeal as non justiciable with regard to Appellants’ as-applied challenges. And, we remand with instructions that the district court vacate the portion of its opinion concerning Appellants’ as-applied challenges.
FACTUAL AND PROCEDURAL BACKGROUND
The PRA requires political committees to report certain information about their contributors to the State. Specifically, po *831 litical committees must file semi-annual disclosures, which, among other things, identify those individuals who have contributed more than $100 during or after a campaign, in addition to each contributor’s address, occupation, and employer. Cal. Gov.Code §§ 84200, 84211(f). The State of California then publishes this information on the website of the California Secretary of State (the Secretary), and produces hard copies upon request.
Appellants, to whom we refer as the Prop 8 Committees or the Committees, are political committees that supported the November 2008 passage of Proposition 8. That proposition amended the California Constitution to provide that “[o]nly marriage between a man and a woman is valid or recognized in California.” Cal. Const., Art. I, § 7.5. Proposition 8 was subsequently invalidated. See Hollingsworth v. Perry, — U.S.-, 133 S.Ct. 2652, 2660, 186 L.Ed.2d 768 (2013) (citing Perry v. Schwarzenegger, 704 F.Supp.2d 921, 1004 (N.D.Cal.2010)).
Prior to Proposition 8’s passage, the Prop 8 Committees submitted disclosures to comply with the PRA’s semi-annual reporting deadlines. These disclosures were published on the Secretary’s website, and are available in hard copy. Following Proposition 8’s passage, the Committees initiated this action in the United States District Court for the Eastern District of California, challenging the constitutionality of the PRA’s disclosure requirements both facially and as applied to them. The Committees argued that their donors have been harassed as a result of the Committees’ PRA disclosures, and they sought (1) an injunction exempting them from the PRA’s future reporting deadlines, and (2) declaratory and injunctive relief requiring the State to purge all records of their past PRA disclosures.
On January 30, 2009, the district court denied Appellants’ motion for a preliminary injunction. Appellants did not appeal the district court’s order under 28 U.S.C. § 1292(a). Instead, they complied with the PRA’s January 31, 2009 disclosure deadline, reporting those contributors who donated after October 19, 2008 and before December 31, 2008. The Secretary published these disclosures on her website, and made them publicly available in hard copy.[1] On November 4, 2011, the district court granted summary judgment in favor of the State on all counts. Appellants timely appealed, asking us to reverse the judgment of the district court and to order the State to purge all records of Appellants’ PRA disclosures.
We have jurisdiction under 28 U.S.C. § 1291. We review a district court’s grant of summary judgment de novo. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir.2007). We review questions of justiciability de novo. Bell v. City of Boise, 709 F.3d 890, 896 (9th Cir.2013).
DISCUSSION
I. Facial Challenges
Appellants assert that the PRA’s $100 reporting threshold and “post-election reporting requirements” are facially unconstitutional in the context of ballot initiatives. Our decision in Family PAC v. McKenna directly precludes Appellants’ challenge to the $100 threshold. 685 F.3d 800, 809-11 (9th Cir.2012) (holding that $25 and $100 contribution disclosure thresholds survive “exacting scrutiny” in the context of ballot initiatives). Appellants’ facial challenge to the post-election reporting requirements fails as well.
*832 A. Legal Standard
Contribution disclosure requirements are subject to “exacting scrutiny.” Citizens United v. FEC, 558 U.S. 310, 366-67, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010); Buckley v. Valeo, 424 U.S. 1, 44, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In applying exacting scrutiny, we first ask whether the challenged regulation burdens First Amendment rights. If it does, we then assess whether there is a “substantial relation” between the burden imposed by the regulation and a “sufficiently important” governmental interest. Citizens United, 558 U.S. at 366-67, 130 S.Ct. 876; Family PAC, 685 F.3d at 805-06 (citing Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1005 (9th Cir.2010)).
Although disclosure is generally “a less restrictive alternative to more comprehensive regulations of speech,” Citizens United, 558 U.S. at 369, 130 S.Ct. 876, contribution disclosure requirements may burden First Amendment rights by, among other things, deterring “individuals who would prefer to remain anonymous from contributing,” Family PAC, 685 F.3d at 806-07 (internal quotation marks omitted). To justify these burdens and to survive exacting scrutiny, “the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.” Doe No. 1 v. Reed, 561 U.S. 186, 130 S.Ct. 2811, 2818, 177 L.Ed.2d 493 (2010) (internal quotation marks omitted).
The Supreme Court recognizes three substantial government interests that campaign contribution disclosure requirements may serve. Buckley, 424 U.S. at 66-68, 96 S.Ct. 612; see also Doe, 130 S.Ct. at 2819-21. First, disclosure requirements may serve a substantial “informational interest” by providing the electorate with information about the source of campaign money, the individuals and interests seeking their vote, and where a particular ballot measure or candidate falls on the political spectrum. Buckley, 424 U.S. at 66-67, 96 S.Ct. 612; Family PAC, 685 F.3d at 806. This interest is particularly important in the ballot initiative context. As we explained in Family PAC:
The governmental interest in informing the electorate about who is financing ballot measure committees is of great importance. Disclosure enables the electorate to give proper weight to different speakers and messages ... by providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas.... Given the complexity of the issues and the unwillingness of much of the electorate to independently study the propriety of individual ballot measures, we think being able to evaluate who is doing the talking is of great importance.... Disclosure also gives voters insight into the actual policy ramifications of a ballot measure. Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown.
Family PAC, 685 F.3d at 808-09 (internal quotation marks and citations omitted); see also Human Life of Wash. Inc., 624 F.3d at 1006 (“[T]he high stakes of the ballot context only amplify the crucial need to inform the electorate....”).
Disclosure requirements may also help preserve the integrity of the electoral process by deterring corruption and the appearance of corruption. Doe, 130 S.Ct. at 2819; Buckley, 424 U.S. at 67, 96 S.Ct. 612 (explaining that disclosure requirements deter “those who would use money for improper purposes either before or after *833 the election”). This interest extends generally to “promoting transparency and accountability in the electoral process,” and those states that allow ballot initiatives “have considerable leeway to protect the integrity and reliability of the initiative process.” Doe, 130 S.Ct. at 2819 (citations and quotations omitted).
Finally, disclosure requirements may permit accurate record-keeping. “[Djisclo-sure requirements are an essential means of gathering the data necessary to detect violations of ... contribution limitations.” Buckley, 424 U.S. at 68, 96 S.Ct. 612. Such records further enhance the public’s future associational rights by offering voters information about which policies those seeking their vote have previously endorsed.
Both the Supreme Court and our court have rejected facial challenges to contribution disclosure requirements in several cases, holding that these substantial interests outweigh the modest burdens that the challenged disclosures impose on First Amendment rights. See, e.g., Doe, 130 S.Ct. at 2820 (holding that a state law authorizing private parties to obtain copies of referendum petitions is “substantially related to the important interest of preserving the integrity of the electoral process”); Family PAC, 685 F.3d at 805-11; Human Life of Wash. Inc., 624 F.3d at 1013-14; Alaska Right To Life Comm. v. Miles, 441 F.3d 773, 791-92 (9th Cir.2006).
B. Application
The PRA imposes reporting requirements on ballot committees, which require them to disclose the names of, and other identifying information about, contributors who donate $100 or more. The PRA’s reporting deadlines are semiannual. Accordingly, donations that are made prior to an election, but after the final preelection reporting deadline, are reported after the election concludes. Appellants argue that this requirement is unconstitutional, because a state’s only interest in disclosure is its interest in an informed electorate, and this interest allegedly expires with the election’s conclusion. We reject Appellants’ narrow view of the government’s interest in disclosure.
A state’s interests in contribution disclosure do not necessarily end on election day. Even if a state’s interest in disseminating accurate information to voters is lessened after the election takes place, the state retains its interests in accurate record-keeping, deterring fraud, and enforcing contribution limits. As a practical matter, some lag time between an election and disclosure of contributions that immediately precede that election is necessary for the state to protect these interests. In this ease, for example, Appellants’ contributions surged nearly 40% (i.e., by over $12 million) between the final pre-election reporting deadline and election day. Absent post-election reporting requirements, California could not account for such late-in-the-day donations. And, without such reporting requirements, donors could undermine the State’s interests in disclosure by donating only once the final pre-election reporting deadline has passed. Accordingly, we hold that the government’s interest in disclosing contributions to ballot initiative committees is not merely a pre-election interest, and we affirm the district court’s judgment with regard to Appellants’ facial challenges.
II. As-Applied Challenges
Appellants also challenge the PRA disclosure requirements as applied to themselves.
To the extent that Appellants seek an injunction requiring the State to purge records of their past PRA disclosures, any claim for such relief is moot. To the *834 extent that Appellants seek a forward-looking exemption from California’s PRA requirements, such a claim is not ripe. Accordingly, we dismiss as non justiciable Appellants’ appeal from the district court’s judgment rejecting their as-applied claims, and we direct the court to vacate this portion of its opinion.
A. Mootness
Article Ill’s “case-or-controversy” requirement precludes federal courts from deciding “questions that cannot affect the rights of litigants in the case before them.” DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam) (quoting North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)).
1. Present Controversy
a. Legal Standard
 It is not enough that a case presents a live controversy when it is filed. FEC v. Wisc. Right To Life, Inc., 551 U.S. 449, 461, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). An actual controversy must exist at all stages of federal court proceedings. Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). This means that, at all stages of the litigation, the plaintiff “must have suffered, or be threatened -with, an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision.” Id. (quoting Lewis v. Cont’l Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). “[T]he judicial branch loses its power to render a decision on the merits of [a] claim,” Nome Eskimo Cmty. v. Babbitt, 67 F.3d 813, 815 (9th Cir.1995), when a federal court can no longer effectively remedy a “present controversy” between the parties, Doe, 697 F.3d at 1238 (quoting Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir.2008)).
 We are unable to effectively remedy a present controversy between the parties where a plaintiff seeks to enjoin an activity that has already occurred, and we cannot “undo” that action’s allegedly harmful effects. Foster v. Carson, 347 F.3d 742, 746 (9th Cir.2003) (citing Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 871 (9th Cir.2002)); see also Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1095 (9th Cir.2001). For example, “once a fact is widely available to the public, a court cannot grant ‘effective relief to a person seeking to keep that fact a secret.” Doe, 697 F.3d at 1240; see also Islamic Shura Council of S. Cal. v. FBI, 635 F.3d 1160, 1164 (9th Cir.2011); In re Copley Press, Inc., 518 F.3d 1022, 1025 (9th Cir.2008) (“Once information is published, it cannot be made secret again.”). For this reason, “a case seeking to keep a document secret is moot once third parties have control over copies of the document.” Doe, 697 F.3d at 1239 (quoting C &C Prods., Inc. v. Messick, 700 F.2d 635, 636-37 (11th Cir.1983)). A case is similarly moot where a plaintiff seeks to enjoin specific parties from disclosing information that has already been published across the Internet. Doe, 697 F.3d at 1240.
b. Application
Appellants’ request for an injunction requiring the State to purge all records of their PRA disclosures does not present a live controversy.
Before commencing this lawsuit, Appellants voluntarily complied with all PRA reporting requirements, and they have continued to do so throughout this litigation. Appellants most recently filed PRA disclosures on January 17, 2014 — more than two years after filing this appeal. Each PRA disclosure that Appellants have *835 submitted is published on the Secretary’s website, and is publicly available in hard copy.[2]
The record is replete with evidence that Appellants’ PRA disclosures have been accessed and republished by third parties. Appellants themselves provided detailed documentation of several websites that have published their contributors’ names, employers, and addresses. Appellants also represent that: (1) one site allows individuals to search for “any city and print a map graphically illustrating the name, address, [contribution] amount, occupation, and employer of each individual in that city who contributed to Prop. 8”; (2) “at least two major California newspapers have compiled searchable databases ... that enable easy access to look up Prop. 8 contributors”; and (3) Time Magazine directed its readership to a website that publishes the information contained in Appellants’ PRA disclosures.
In light of the disclosures, and their vast dissemination, we can no longer provide Appellants with effective relief. The information that Appellants seek to keep private has been publicly available on the Internet and in hard copy for nearly five years. Third parties already have control over this information. Moreover, we have no way of knowing how many individuals have: (1) viewed Appellants’ PRA disclosures; (2) retained copies of the disclosures or their contents; or (3) reproduced the disclosures. Accordingly, we cannot remedy Appellants’ alleged harms, and their request for an injunction requiring the State to purge their past PRA-disclosures does not present a live controversy.[3]
*836 2. Capable of Repetition, Yet Evading Review
We further hold that Appellants’ request for injunctive relief does not fall within the mootness exception for cases that are “capable of repetition, yet evading review.”
a. Legal Standard
As we explain above, a federal court loses its jurisdiction to reach the merits of a claim when the court can no longer effectively remedy a present controversy between the parties. Doe, 697 F.3d at 1238 (quoting Feldman, 518 F.3d at 642); Nome Eskimo Cmty., 67 F.3d at 815. There is an exception to this rule, however, where an otherwise moot action is “capable of repetition, yet evading review.” Lewis, 494 U.S. at 481, 110 S.Ct. 1249. Under the “capable of repetition, yet evading review” exception, we will decline to dismiss an otherwise moot action if we find that: “(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.” Wise. Right to Life, Inc., 551 U.S. at 462, 127 S.Ct. 2652 (internal quotation marks omitted).
For a controversy to be “too short to be fully litigated prior to cessation or expiration,” it must be of “inherently limited duration.” Doe, 697 F.3d at 1240 (emphasis added). This is so because the “capable of repetition, yet evading review” exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would always evade judicial review. Id. at 1240—41; see also Bunker Ltd. P’ship v. United States (In re Bunker Ltd. P’ship), 820 F.2d 308, 311 (9th Cir.1987) (“[t]he exception was designed to apply to situations where the type of injury involved inherently precludes judicial review”); 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures: Jurisdiction and Related Matters § 3533.8.2 (3d ed.2013) (collecting cases). Notably, regardless of any injunction that might issue, a woman can only obtain an abortion so long as she remains pregnant. Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We can only invalidate a temporary injunction so long as that injunction remains in effect. Carroll v. President & Comm’rs of Princess Anne, 393 U.S. 175, 178-79, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Enyart v. Nat’l Conference of Bar Exam’rs, Inc., 630 F.3d 1153, 1159-60 (9th Cir.2011). And where a purportedly invalid law inhibits a political candidate or party’s ability to win an election, we can only remedy that impediment before the election occurs. Norman v. Reed, 502 U.S. 279, 288-89, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). We recognize these types of controversies as “inherently limited in duration,” because they will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible. The limited duration of such controversies is clear at the action’s inception.
Actions seeking to enjoin future conduct are different. Such actions only become moot if the challenged conduct actually occurs and causes an injury that cannot be reversed. These actions are not of “inherently limited duration,” because the challenged conduct might never occur. And, a court can ensure that a live controversy persists until the action is fully litigated by enjoining the challenged conduct until the litigation concludes. See Doe, 697 F.3d at 1240-41.
Because mootness concerns whether we have power to hear a case, we apply the “capable of repetition, yet evading review” exception sparingly, and only *837 in “exceptional situations.” Lewis, 494 U.S. at 481, 110 S.Ct. 1249. Controversies that are not of “inherently limited duration” do not create “exceptional situations” justifying the rule’s application, because, even if a particular controversy evades review, there is no risk that future repetitions of the controversy will necessarily evade review as well. As we have explained, “[t]he exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where ... [review is precluded as a] practical matter.” Bunker, 820 F.2d at 311.
For this reason, where preliminary injunctive relief is available to maintain a live controversy, it is of no consequence to the mootness inquiry that a particular party has failed to actually obtain such relief. “[A] party may not profit from the ‘capable of repetition, yet evading review[1] exception ... where through his own failure to seek and obtain [prompt relief] he has prevented [an] appellate court from reviewing the trial court’s decision.” Id. at 311; see also Newdow v. Roberts, 603 F.3d 1002, 1008-09 (D.C.Cir.2010). In such circumstances, we have no power to hear the action, and the controversy must be resolved in a future action presenting a live dispute. Doe, 697 F.3d at 1241; see also Headwaters, Inc. v. Bureau of Land Mgmt., 893 F.2d 1012, 1016 (9th Cir.1990) (holding that a party may not invoke the “capable of repetition, yet evading review” exception where its failure to obtain prompt relief has prevented judicial review); Bunker, 820 F.2d at 311.
Lawsuits seeking to enjoin the disclosure of sensitive information do not fall into the mootness exception for cases that are “capable of repetition, yet evading review,” because there is no inherent limit on the duration of such controversies. For example, in a case challenging campaign contribution disclosure requirements, the court can maintain a live controversy by issuing an order that either: (1) temporarily excuses the plaintiffs from complying with the challenged requirements; or (2) temporarily precludes the state from disclosing the challenged information. Doe, 697 F.3d at 1240-41. Whether a party actually obtains such an order in a particular case does not affect our jurisdictional inquiry. See id.
b. Application
The “capable of repetition, yet evading review” exception does not apply to Appellants’ claims, because there was no “inherent limit” on the duration of this controversy. A court order temporarily excusing Appellants from the PRA’s reporting deadline or enjoining the state from publicly disclosing Appellants’ filings could have permitted the parties to fully litigate this case on the merits. Appellants simply failed to obtain such an order.
After the district court denied Appellants’ motion for a temporary restraining order, Appellants did not file an interlocutory appeal, nor did they seek an injunction pending appeal. By the time Appellants’ claims reached us, the information that Appellants seek to keep private had been publicly available for nearly five years. If Appellants were to bring a similar action in the future, their claims would not, by their nature, again evade review, because a different litigation strategy could maintain a live controversy until the action’s final resolution.[4]
In reaching this conclusion, we emphasize that the justiciability of disputes con *838 cerning the disclosure of sensitive information may well turn on whether preliminary relief is granted at an action’s inception. As this case demonstrates, the premature disclosure of information can eviscerate a live controversy. Nevertheless, the fact that preliminary relief is technically available to maintain a live controversy will also deprive federal courts of jurisdiction to consider the action as one that is “capable of repetition, yet evading review.” Accordingly, we advise courts to exercise the utmost caution at the early stages of actions concerning the disclosure of sensitive information, and to consider this “mootness Catch-22” when assessing whether the denial of preliminary relief will likely result in irreparable harm. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).
B. Ripeness
Finally, Appellants urge that they are entitled to an injunction exempting them from complying with future PRA disclosure requirements, because they expect to participate in future campaigns opposing same-sex marriage. This claim for forward-looking relief is not ripe for judicial review.
1. Legal Standard
The ripeness doctrine seeks to identify those matters that are premature for judicial review because the injury at issue is speculative, or may never occur. Alcoa, Inc. v. Bonneville Power Admin., 698 F.3d 774, 793 (9th Cir.2012); see also Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). “For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are requisite.” United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (internal quotations omitted). Concrete legal issues require more than mere “hypothetical threatfs],” and *839 where we can “only speculate” as to the specific activities in which a party seeks to engage, we must dismiss a claim as non-justiciable. Id. at 90, 67 S.Ct. 556.
We have explained that “the ripeness inquiry contains both a constitutional and a prudential component.” Thomas v. Anchorage Equal Rights Comm’n, 220 F.3d 1134, 1138 (9th Cir.2000) (en banc). The constitutional component overlaps with, and is often indistinguishable from, the “injury in fact prong” of our standing analysis. Id. Whether we view injury in fact as a question' of standing or ripeness, “we consider whether the plaintiff[] face[s] a realistic danger of sustaining a direct injury as a result of the statute’s operation or enforcement ... or whether the alleged injury is too imaginary or speculative to support jurisdiction.” Id. at 1139 (internal quotation marks and citations omitted). If this constitutional requirement is not satisfied, we lack jurisdiction, and we need not consider the prudential component of the ripeness inquiry.
We typically look to three factors to assess whether a pre-enforcement challenge is ripe for review under Article III. Id. We first consider whether the plaintiff articulates a “concrete plan to violate the law.” Id. (internal quotation marks omitted). With regard to this prong, “[a] general intent to violate a statute at some unknown date in the future” is not sufficient, id., and the plaintiff must establish a plan “that is more than hypothetical,” Wolfson v. Brammer, 616 F.3d 1045, 1059 (9th Cir.2010).
Next, we typically look to whether the government has “communicated a specific warning or threat to initiate proceedings” under the statute. Thomas, 220 F.3d at 1139. Our analysis under this second prong is somewhat different, however, in a pre-enforcement challenge that alleges a free speech violation under the First Amendment. See Wolfson, 616 F.3d at 1059-60. In such actions, the plaintiff need not establish an actual threat of government prosecution. Id. Rather, the plaintiff need only demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct. Id.
Finally, we consider the history of past prosecution or enforcement under the statute. Thomas, 220 F.3d at 1140. Under this third prong, “the government’s active enforcement of a statute [may] render[] the plaintiffs fear [of injury] ... reasonable.” Id.
Weighing these factors, we will only conclude that a pre-enforcement action is ripe for judicial review if the alleged injury is “reasonable” and “imminent,” and not merely “theoretically possible.” Id. at 1141. A claim is not ripe where “[t]he asserted threat is wholly contingent on the occurrence of unforeseeable events,” or where the plaintiffs do not “confront a realistic danger of sustaining a direct injury as a result of the statute’s operation or enforcement.” Id. (internal quotation marks and citations omitted).
The application of these principles is illustrated in Renne v. Geary, 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991), in which the Supreme Court dismissed a challenge to a provision in the California constitution prohibiting political parties and committees from endorsing, supporting, or opposing candidates for nonpartisan offices. In that case, the Republican Committee submitted an affidavit stating:
It is the plan and intention of the Republican Committee to endorse candidates for nonpartisan offices in as many future elections as possible. The Republican Committee would like to have *840 such endorsements publicized by endorsed candidates in their candidate’s statements in the San Francisco voter’s pamphlet, and to encourage endorsed candidates to so publish their endorsements by the Republican Committee.
Id. at 317, 111 S.Ct. 2331.
In holding that the Republican Committee did not present a ripe controversy, the Renne Court explained that “[the Committee] d[id] not allege an intention to endorse any particular candidate.... [and there is] no factual record of an actual or imminent application of [the challenged provision] sufficient to present the constitutional issues....” Id. at 321-22, 111 S.Ct. 2331 (citations omitted).
2. Application
At this stage, any as-applied challenge based on Appellants’ future activity fails to “tender[ ] the underlying constitutional issues in clean cut and concrete form.” Socialist Labor Party v. Gilligan, 406 U.S. 583, 588, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972) (quoting Rescue Army v. Mun. Court, 331 U.S. 549, 584, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947)). The only information that we have regarding Appellants’ intended future activities is that Appellants expect to participate in future campaigns opposing same-sex marriage, and that, in so doing, they wish not to comply with the PRA’s disclosure requirements.
Appellants have not offered any information regarding when they may next support a campaign opposing same-sex marriage, what type of campaign they will support, where they will support it, what their involvement will entail, or whether their donors will likely face personal harassment. Without this information, we cannot discern a concrete plan to engage in protected conduct. Rather, the scant information that Appellants provide merely demonstrates “[a] general intent to [engage in protected conduct] at some unknown date in the future,” along with a speculative fear that Appellants’ donors may be personally harassed as a result of disclosing their contributions to such an effort. Wolfson, 616 F.3d at 1059. These hypothetical plans and fears do not create an immediate threat of self-censorship. And, as in Renne, there is no factual record of the State’s bringing PRA enforcement actions against those who do not comply with the statute’s disclosure requirements. Renne, 501 U.S. at 321-22, 111 S.Ct. 2331. Accordingly, any claim based on Appellants’ future activities is not ripe under the Thomas factors.
In reaching this conclusion, we emphasize that we have “no right to pronounce an abstract opinion upon the constitutionality of a [s]tate law,” Poe v. Ullman, 367 U.S. 497, 504, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). As-applied challenges to contribution disclosure laws are fact-specific in nature. Whether a group will succeed in asserting such a challenge depends on factors such as the group’s size, the nature of the campaign, the political tenor in the community, and the actions of third parties and government entities. See Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 89-92, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982). Unlike California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088 (9th Cir.2003) and New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir.1995) — upon which the dissent relies — any opinion that we could issue regarding Appellants’ forward-looking claims would require us to speculate about the nature of events that might take' place at some unknown time in the future, and to declare the constitutionality of a state law in the context of these uncertain circumstances. Under Article III, we lack the authority to issue such an opinion. See Renne, 501 U.S. at 323, 111 S.Ct. 2331 (“[a] *841 determination of the ... constitutionality of legislation^] in advance of its immediate adverse effect in the context of a concrete case[,] involves too remote and abstract an inquiry for the proper exercise of the judicial function”).
CONCLUSION
For the foregoing reasons, we affirm the district court’s judgment -with regard to Appellants’ facial challenges. We dismiss this appeal as non justiciable with regard to Appellants’ as-applied challenges, and we remand these claims to the district court with instructions that the court vacate the portion of its opinion concerning Appellants’ as-applied challenges. See Bunker, 820 F.2d at 313. Appellants shall bear costs on appeal.
AFFIRMED in part; DISMISSED in part; and REMANDED with instructions.

. Appellant "National Organization for Marriage California PAC” was subsequently formed, and joined in Plaintiffs’ Third Amended Complaint.

. Specifically, since the PRA’s January 31, 2009 reporting deadline, "ProtectMar-riage.com-Yes on 8, a Project of California Renewal” has made seven additional filings. There was no committee activity between January 2009 and June 2011, but filings were made in June 2011, July 2011, January 2012, July 2012, January 2013, and July 2013. "National Organization for Marriage California — Yes on 8, Sponsored by National Organization for Marriage” has made two filings since the January 2009 deadline, in July 2009 and January 2010. There has been no committee activity since January 2010. Finally, “National Organization for Marriage California PAC” was formed subsequent to the November 2008 election, and joined in Plaintiffs’ Third Amended Complaint. It has only made one filing, in July 2010, and its only donor was the National Organization for Marriage. In each instance, the information filed with the Secretary of State was posted on the Internet, and was and is available in hard copy.

. Our dissenting colleague does not dispute that our precedent compels this conclusion. Rather, Judge Wallace argues that Doe was wrongly decided in light of Church of Scientology of California v. United States, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). In Church of Scientology, the Supreme Court held that the improper disclosure of privileged audio tapes to the IRS did not moot a claim to destroy or return those tapes. Id. at 13, 113 S.Ct. 447. But Church of Scientology involved a finite set of tangible records that had only been disclosed to a party to the action. Accordingly, the Court was able to clearly identify each person who had viewed the information, and order that each copy be returned or purged. Conversely, in this case, as in Doe, the challenged information is in the hands of third parties over whom we lack jurisdiction, and it has been widely available on the Internet for several years. It is now impossible to identify how many people have viewed this information, locate every reproduction of this information, and prevent the information's continued disclosure. As in Doe, the widespread disclosure of Appellants' PRA disclosures precludes us from providing the "effective relief” that the Supreme Court recognized in Church of Scientology. We also observe that even if Judge Wallace were correct that Doe was wrongly decided, we would still be bound by Doe's holding unless and until the Supreme Court announces a “clearly irreconcilable” rule, or our court, sitting en banc, announces an alternate rule. Miller v. Gammie, 335 F.3d 889, 900 (2003) (en banc). As noted, Church of Scientology is not "clearly irreconcilable” with Doe.'

. In concluding that this controversy is justi-ciable, the dissent argues that under Enyart, the "capable of repetition, yet evading review” exception considers whether the circumstances of a particular litigation allowed a party to fully litigate its claims before they became moot. But Enyart dealt with an issue of an entirely different nature.
*838 It is well established that when a party challenges a temporary injunction and that party will likely face a similar injunction in the future, the injury caused by that injunction is “capable of repetition, yet evading review.” Carroll, 393 U.S. at 178-79, 89 S.Ct. 347. This is so because any injury caused by a temporary injunction ends when the injunction expires, and no court order can extend the duration of the controversy past the injunction’s expiration. Enyart involved a straightforward application of this rule. We merely held that a challenge to a temporary injunction remained justiciable after the injunction expired because there was a reasonable expectation that the appellants would be subject to the same injunction in the future. 630 F.3d at 1159-60.
The dissent reasons that, because we considered the duration of the challenged injunctions in Enyart, we should consider this litigation’s timeline in assessing whether Appellants’ claims "evade review.” In so doing, the dissent highlights that there was only one day between the issuance of the district court’s order denying preliminary injunctive, relief and the PRA's January 31, 2009 disclosure deadline.
The dissent errs with regard to the time-frame that is relevant to whether a controversy inevitably "evades review.” As we explain above, a controversy "evades review” only if it is of “inherently limited duration.” Bunker, 820 F.2d at 311 ("[t]he exception was designed to apply to situations where the type of injury involved ... [evades review] by [its] nature” (emphasis added)). A case is not of "inherently limited duration” if a court order could maintain a live controversy until the action is fully litigated.
While the timing of the district court’s order made it difficult for Appellants to maintain a live controversy in this case, we can no longer redress Appellants’ alleged injuries, and we therefore lack jurisdiction over this appeal. Despite the dissent's contrary assertions, the poor timing of the district court’s order cannot confer jurisdiction upon us that would not otherwise exist.

. As the majority observes, this panel is bound by the holding in Reed “unless and until the Supreme Court announces a 'clearly irreconcilable' rule, or our court, sitting en banc, announces an alternate rule.” (Majority Op. at 835 n. 3.) My purpose here is to explain the misguided reasoning of Reed, in the hope that our court will reconsider the erroneous rule it propounds, or distinguish Reed and follow the clear mandate of the Supreme Court in Church of Scientology.