**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES; NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> VICKI CHRISTENSEN, Interim Regional Forester of Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior, <br><br> Defendants - Appellants. | No. 14-35069 <br><br> D.C. No. 9:12-cv-00055-DLC <br><br> MEMORANDUM[*] |
| ALLIANCE FOR THE WILD ROCKIES; NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> VICKI CHRISTENSEN, Interim Regional Forester of Region One of the U.S. Forest | No. 14-35123 <br><br> D.C. No. 9:12-cv-00055-DLC |

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior,

Defendants - Appellees.

Appeals from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued May 3, 2016 Submitted November 1, 2016
Portland, Oregon

Before: TASHIMA, TALLMAN, and HURWITZ, Circuit Judges.

Federal Defendants United States Forest Service ("Forest Service") and United States Fish & Wildlife Service ("FWS") appeal the district court's grant of summary judgment enjoining two projects in the Gallatin National Forest—the Bozeman Municipal Watershed Project and the East Boulder Project—for violating the Endangered Species Act ("ESA") by failing to adequately assess impacts on lynx critical habitat. Plaintiffs, Alliance for the Wild Rockies and the Native Ecosystems Council, cross-appeal the district court's grant of summary judgment to the Federal Defendants concerning the projects' compliance with ESA and the

National Environmental Policy Act ("NEPA") as they relate to impacts on grizzly bears. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1. Lynx**

The district court did not err in holding that the federal agencies must reinitiate ESA § 7(a)(2) consultation on the Northern Rocky Mountains Lynx Management Direction ("Lynx Amendments") and the specific Gallatin National Forest projects. *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015), *cert. denied*, — U.S. —, 2016 WL 2840129 (Oct. 11, 2016), is controlling. There, we held that reinitiation was required on the Lynx Amendments because FWS later designated additional critical lynx habitat not contained in the Amendments' coverage area. *Id.* at 1088. The same claim regarding the Lynx Amendments is raised here, and because the habitat assessments for the projects in this case rely on the pre-designation version of the Lynx Amendments, *Cottonwood* applies to both claims. The Forest Service must reinitiate consultation with FWS.

Further, the district court did not abuse its discretion in granting injunctive relief to Plaintiffs. *See W. Watershed Project v. Matejko*, 468 F.3d 1099, 1107 (9th Cir. 2006) (standard of review). For alleged ESA violations, the traditional preliminary injunction standard does not apply. *See Amoco Prod. Co. v. Vill. of*

3

*Gambell*, 480 U.S. 531, 545 (1987); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978); *Cottonwood*, 789 F.3d at 1088, 1090. Rather, Plaintiffs must only show they have or will suffer an irreparable injury to obtain injunctive relief. *Cottonwood*, 789 F.3d at 1091.

Although the district court erred in applying a burden shifting approach and presuming irreparable injury, *see id.*, the error was harmless, as we are satisfied from the record that Plaintiffs have suffered such an injury. Plaintiffs use the project areas for wildlife viewing, and the projects will clearly cause harm to significant portions of lynx habitat. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (finding irreparable injury where plaintiffs' recreational use of a forest was harmed by logging that impacted portions of the forest). This injury supports injunctive relief.

## 2. Grizzly Bears

The district court did not err in holding that the 2006 Travel Plan Biological Opinion and incidental take statement utilized the best available science. Courts grant considerable discretion to agencies on technical issues and do not weigh competing scientific analyses. *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 658–59 (9th Cir. 2009). Here, the federal agencies identified the "secure habitat" standard as the best available science and adhered to it for the Travel Plan's incidental take

4

statement. The Schwartz study does not undermine that finding. Nor does it say that the best available science necessarily requires the use of "road density" to measure impacts on grizzly bear populations. In fact, the agencies did consider road density in their analyses of the forest projects and the 2006 plan. As such, the district court properly granted summary judgment to Defendants on this issue.

The district court also properly held that the Gallatin Forest projects comply with the 2006 Travel Plan Biological Opinion and incidental take statement. Both projects repeatedly state that road use will not impart any effects on grizzly bears or their habitat in addition to those analyzed in the 2006 Biological Opinion. Further, the Forest Service is required to monitor secure habitat percentages on an annual basis under the incidental take statement. This monitoring requirement makes it unnecessary for the Forest Service to calculate project-specific effects on secure habitat percentages. Thus, the Forest Service did not act arbitrarily or capriciously in determining that the Gallatin Forest projects comply with the 2006 Travel Plan, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (standard of review); *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 943 (9th Cir. 2014) (noting that agencies must balance the need for comprehensive analysis against considerations of practicality), and the district court properly granted summary judgment in the agencies' favor.

The Forest Service did, however, fail to comply with the annual monitoring and reporting requirements of the 2006 Travel Plan. But Plaintiffs' claim is moot. While the 2006 Travel Plan originally required the Forest Service to use travel planning areas as the unit of measure, the incidental take statement was later amended to allow for use of bear analysis units. Therefore, this panel can no longer provide a remedy, *see Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014), and, notwithstanding the district court's error, we affirm its grant of summary judgment on this issue.

Finally, the district court did not err in holding that the duration of helicopter logging was an adequate surrogate measure of grizzly bear takes. In the 2009 Bozeman Project Biological Opinion, the Forest Service thoroughly discussed helicopter logging's relative impact on grizzly bears, both in roaded areas and "inventoried roadless areas." The agency also adequately explained why grizzly bear takes due to helicopter logging are difficult to quantify and detect, requiring the use of a surrogate measure. From these considerations, the Forest Service concluded that the proposed project length—144 days—would likely result in "only a low level of incidental take" of female grizzly bears. It therefore decided to cap the safe-harbor at that length, triggering the need to reinitiate consultation should helicopters be required for more than 144 days. *See Ariz. Cattle Growers'*

*Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1249 (9th Cir. 2001). Because the agency's determination was not arbitrary and capricious, the district court did not err.

Each party shall bear its own costs.

**AFFIRMED.**